Merrimack
No. 90-055

GORDON M. SNYDER

v.

NEW HAMPSHIRE SAVINGS BANK & a.

March 13, 1991

*Howard and Gleason P.A.*, of Henniker (*Robert R. Howard, III*, on the brief and orally), for the appellant, Bio-Energy Corporation.

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Mary Ellen Kiley* on the brief and orally), for the defendant New Hampshire Savings Bank.

*Orr and Reno P.A.*, of Concord (*James E. Morris* on the brief and orally), for the defendant Papertech Corporation.

JOHNSON, J. The appellant, Bio-Energy Corporation (Bio-Energy), appeals the Superior Court's (*M. Flynn*, J.) denial of its motion to intervene as a plaintiff in this case, an equity action to set aside a foreclosure sale for lack of proper notice. At issue is the application to lessees of RSA 479:25, II (Supp. 1990), which requires notice to certain persons of an impending foreclosure under a power of sale mortgage. We reverse the trial court's ruling that Bio-Energy, a lessee, is not entitled to notice under RSA 479:25, II (Supp. 1990), and remand.

Bio-Energy entered into a ten-year lease with Hoague-Sprague Corporation in January 1985, for possession of property owned by Hoague-Sprague in Hopkinton, and subsequently recorded the lease. At the time of the agreement, the leased premises were subject to four mortgages which were granted, in order of priority, to (1) New Hampshire Savings Bank (NHSB); (2) United States Small Business Administration; (3) Gordon M. Snyder; and (4) Walter E. Heller & Company of New England, Inc. NHSB's mortgage contained a power of sale. In December 1987, after Hoague-Sprague defaulted on the mortgage loan, NHSB conducted a foreclosure sale of the property at which Papertech Corporation, which now holds title, was the highest bidder. At the time the parties' briefs were filed in this court, Bio-Energy still occupied the leased premises.

In March 1988, Snyder, one of the four original mortgagees, filed a bill in equity to invalidate the foreclosure sale. Snyder alleged that the sale was held in violation of RSA 479:25, II (Supp. 1990), because he did not receive written notice of the sale. He argued that, as a lienholder, the statute entitled him to such notice. The statute reads, in pertinent part:

> "[N]otice shall be served upon the mortgagor or sent by registered or certified mail to his last known address or to such person as may be agreed upon in the mortgage at least 25 days before the sale. The term 'mortgagor' shall include the mortgagor or the then record owner of the premises. Like notice shall be sent to any person having a lien on the premises of record . . . ."

In February 1989, Papertech served Bio-Energy with a notice to quit the leased premises. Bio-Energy responded by filing a motion to intervene in Snyder's action to invalidate the foreclosure sale. Bio-Energy argued that it did not receive notice to which it was entitled under RSA 479:25, II (Supp. 1990), and that the foreclosure sale should therefore be set aside. Because this argument is similar to Snyder's, Bio-Energy maintained that it should be allowed to intervene in the interest of judicial economy. The superior court disagreed, ruling that Bio-Energy "was neither a 'lien holder' nor an 'owner' for the purposes of RSA 479:25."

On appeal, Bio-Energy argues that, as a lessee, it qualifies as either a lienholder or an owner for purposes of RSA 479:25, II (Supp. 1990). Alternatively, Bio-Energy argues that, to the extent RSA 479:25, II (Supp. 1990) does not entitle it to written notice of a foreclosure sale under a power of sale mortgage, the statute violates the due process clause of the fourteenth amendment to the United States Constitution. The defendants Papertech and NHSB reply that RSA 479:25, II (Supp. 1990) cannot be read to require notice to a lessee and that such a reading does not result in any constitutional deprivation.

■ Before examining the merits of these arguments, we must consider Bio-Energy's procedural posture. The company has appealed the superior court's denial of its motion to intervene, and therefore our only question is whether the motion was properly denied. We have stated that "the right to intervene has been usually determined as a matter of discretion by the Trial Court." *Scamman v. Sundheim*, 97 N.H. 280, 281, 86 A.2d 329, 330 (1952). Thus, we may not overturn the trial court's decision unless we are persuaded that the court abused its discretion.

■ To determine this issue, we look to the standard a trial court should use in deciding whether to grant a motion to intervene: "[A] person who seeks to intervene in a case must have a *right* involved in the trial and his *interest* must be 'direct and apparent; such as would suffer if not indeed be sacrificed were the court to deny the privilege.'" R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 176, at 129–30 (1984) (emphasis added) (citations omitted). Bio-Energy undoubtedly has an *interest* in seeing the foreclosure sale invalidated. The foreclosure sale resulted in Bio-Energy's obtaining a new landlord and has placed its leasehold in jeopardy. The controversy thus is whether Bio-Energy has an actionable *right* involved in Snyder's equity action. To resolve this question and determine whether the trial court properly denied Bio-Energy's motion to intervene, we will determine whether Bio-Energy has a right to notice under RSA 479:25, II (Supp. 1990).

■ First, we examine Bio-Energy's claim that it is an "owner," for purposes of RSA 479:25, II (Supp. 1990). The statute provides that mortgagors are entitled to personal notice, and defines "mortgagors" to include "the mortgagor or the then record *owner of the premises*." RSA 479:25, II (Supp. 1990) (emphasis added). "To resolve the statutory argument [ ], principles of statutory interpretation require us to look first to the statutory language itself . . . ." *Petition of Jane Doe*, 132 N.H. 270, 276, 564 A.2d 433, 438 (1989). But where the statutory language is ambiguous, we turn to the statute's legislative history for interpretive guidance. *See Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988), *appeal dismissed*, 488 U.S. 1035 (1989).

The phrase "then record owner of the premises" is potentially ambiguous because of the variety of interests a person may own in a particular property. One person may own a life estate in the property, while another owns a remainderman interest. At the same time, one may own a mortgage interest in the property, another a leasehold interest, and another an easement interest. *See* RESTATEMENT (FIRST) OF PROPERTY § 10, at 25 (1936) ("owner" means person who has one or more interests). It is unclear from the language of the statute whether one, some, or all of these possible meanings should be ascribed to the phrase "then record owner of the premises." Thus, we look to the statute's legislative history for guidance.

In 1923, mortgagors were given the right to personal notice of a foreclosure sale under a power of sale mortgage. Laws 1923, 115:1. Until that time, no class of persons was entitled to personal notice.

*See* Laws 1899, 19:3; Laws 1905, 2:1; Laws 1923, 115:1. In 1977, the legislature amended the statute to require that personal notice be given to "a grantee of the mortgagor or the then-owner of the mortgaged premises and any person claiming a lien or other encumbrance upon the premises," as well as to the mortgagor. Laws 1977, 401:1. When this version of RSA 479:25, II (Supp. 1990) was amended in 1979, the language "a grantee of the mortgagor" and "or other encumbrance" was stricken. Laws 1979, 224:1. Since then, that portion of the statute has not been changed.

■ Our task is to determine from the above history what the legislature intended when it deleted certain words and phrases from the statute in 1979. Ordinarily, "any material change in the language of the original act [the 1977 law] is presumed to indicate a change in legal rights." 1A SUTHERLAND STAT. CONST. § 22.30, at 265 (4th ed. C. Sands rev. 1985); *see also Cowan v. Tyrolean Ski Area, Inc.*, 127 N.H. 397, 403, 506 A.2d 690, 694 (1985). But where the language of the original act is ambiguous, that presumption may be rebutted, and the enactment of the amending statute may be viewed as an attempt to resolve that ambiguity. *See* 1A SUTHERLAND STAT. CONST. § 22.30, at 266; *see also Grunnebaum v. C.I.R.*, 420 F.2d 332, 336 (2d Cir. 1970) (proposal to amend regulation can be motivated by desire to clarify or restate existing law); *State v. Taylor*, 47 Wash. App. 118, 123, 734 P.2d 505, 508 (1987).

We conclude that the presumption of change articulated above should not be applied to this case, because the language of the original act, "a grantee of the mortgagor or the then-owner of the mortgaged premises," is ambiguous. A grantee is the owner of whatever he or she was granted; thus, it is confusing to require that notice be given to both a "grantee" and an "owner." We find it likely that the words "a grantee of the mortgagor" were stricken in order to avoid this confusion and to delete unnecessary language. This judgment is supported by the comments of a legislator advocating the amendment. Senator Poulsen, noting the deletion of the words "grantee of the mortgagor," stated that the bill which was ultimately passed "cleans up the law." N.H.S. JOUR. 1000–01 (1979). Thus, the deletion of those words does nothing to alter the class of persons entitled to notice of a foreclosure sale held under a power of sale mortgage.

Applying this interpretation of RSA 479:25, II (Supp. 1990) to the facts of this case, we find that Bio-Energy qualifies for coverage under this statute's notice provision. Hoague-Sprague, the mortgagor in this case, conveyed a leasehold interest to Bio-Energy. Because a

lease is a type of conveyance, *see* BALLENTINE'S LAW DICTIONARY 716 (3d ed. 1969), Bio-Energy is a grantee of the mortgagor. As we stated above, the words "then record owner of the premises" encompass the words "grantee of the mortgagor." Hence, because Bio-Energy is a grantee of the mortgagor, it is also an owner of the premises.

■ The legislative history detailed above leads us to interpret the word "owner" to mean all persons who have an interest in the property. *See* RESTATEMENT (FIRST) OF PROPERTY § 10, at 25 (1936). As the Minnesota Supreme Court stated,

> "An owner is not necessarily one owning the fee-simple, or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property, vested in different persons, and each be an owner thereof."

*Judd v. Landin*, 211 Minn. 465, 472–73, 1 N.W.2d 861, 865 (1942); *see also Chief Freight Lines Co. v. Industrial Commission*, 366 S.W.2d 48, 54 (Mo. Ct. App. 1963) (lessee is an owner). As "the final arbiter of the intent of the legislature as expressed in the words of the statute," *Appeal of Manchester Bd. of School Comm.*, 129 N.H. 151, 152, 523 A.2d 114, 115 (1987), until the legislature makes a clear statement to the contrary, we will interpret the phrase "then record owner of the premises" to apply to all persons having record interests in the property.

■ Our interpretation of RSA 479:25, II (Supp. 1990) comports with the obvious intention the legislature had in enacting the statute; that is, to provide all interested parties with personal notice of a foreclosure sale conducted under a power of sale mortgage. The class of parties entitled to notice appears to be limited only by the requirement that the interest of the party be a recorded one. As a long-term owner of a leasehold, which had recorded its interest and made substantial improvements to the leased property, Bio-Energy easily falls within this class of parties.

Defendant Papertech argues that "extending" the coverage of RSA 479:25, II (Supp. 1990) to lessees would cause undue administrative burden. Most lessees, Papertech maintains, would flock to recording offices to take advantage of this "new right." This argument is unfounded. During oral argument, Papertech admitted that it is *already* the practice of mortgagees to give personal notice, in accordance with the strictures of RSA 479:25, II (Supp. 1990), to *all*

parties whose interests in the mortgaged premises are recorded. Thus it is unlikely that this ruling would cause an increase in the recording of leases. Moreover, assuming such an increase would result, it is for the legislature, consistent with any constitutional requirements, to decide whether this result is against public policy. *See Hertz Corp. v. State*, 518 N.Y.S.2d 704, 710 (N.Y. Sup. Ct. 1987).

■ ■ Bio-Energy is entitled to notice under RSA 479:25, II (Supp. 1990), and therefore its motion to intervene was improperly denied. Because of our interpretation of RSA 479:25, II (Supp. 1990), we need not rule on Bio-Energy's other arguments.

*Reversed and remanded.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: Because I feel that the proper reasoning and result is as follows, I must dissent from the majority's opinion.

I would first, as has the majority, examine Bio-Energy's claim that it is an "owner," for purposes of RSA 479:25, II (Supp. 1990). The statute provides that mortgagors are entitled to personal notice, and defines "mortgagors" to include "the mortgagor or the then record *owner of the premises.*" RSA 479:25, II (Supp. 1990) (emphasis added). "To resolve the statutory argument [ ], principles of statutory interpretation require us to look first to the statutory language itself . . . ." *Petition of Jane Doe*, 132 N.H. 270, 276, 564 A.2d 433, 438 (1989). "[L]egislative intent is to be found not in what the legislature might have intended, but rather, in the meaning of what it did say." *Psychiatric Inst. of America v. Mediplex*, 130 N.H. 125, 128, 536 A.2d 169, 171 (1987). Where words are not defined within a statute, this Court must give them "their plain and ordinary meaning." *Appeal of Rehab. Assoc's of N.E.*, 131 N.H. 560, 565, 556 A.2d 1183, 1186–87 (1989).

Bio-Energy argues that a lessee is an "owner," because a leasehold is an estate of years and is thus an interest in land. This argument superficially comports with the literal language of the Restatement (First) of Property § 10, at 25 (1936), which states that "[t]he word 'owner' . . . means the person who has one or more interests." As a lessee, Bio-Energy is the "owner" of a possessory interest in the premises. *See also Judd v. Landin*, 211 Minn. 465, 472–73, 1 N.W.2d 861, 865 (1942). However, owning a possessory interest in property does not necessarily mean that one is the "owner" of the property, as that word is commonly used.

> "[A] person who has property interests conventionally grouped under a single descriptive term such as 'mortgage,'

'leasehold,' or 'easement' may properly be said either to 'own' or to 'have' the particular mortgage, leasehold, or easement although he is not the 'owner' of the land (or thing other than land) which is the subject of the mortgage, leasehold, or easement."

R. CUNNINGHAM, W. STOEBUCK, AND D. WHITMAN, THE LAW OF PROPERTY § 1.2, at 5 (1984) (interpreting § 10 of RESTATEMENT (FIRST) OF PROPERTY). It is my judgment that the "plain and ordinary meaning" of the word "owner" as it is used in the phrase "then record owner of the premises" is not broad enough to include a lessee. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1612 (unabridged ed., 1961) (owner is one who has title, whether possessor or not), *see also Matter of Minton Group, Inc.*, 46 Bankr. 222, 225 (S.D.N.Y. 1985) (owning particular, circumscribed interest in property does not make one the owner of the property). As a lessee, Bio-Energy merely has possession of the premises, without other incidents of ownership, and is therefore not the "owner" for purposes of RSA 479:25, II (Supp. 1990).

This conclusion is supported also by the canon of statutory interpretation which states that this Court "must assume that all words in a statute were meant to be given meaning in the interpretation of a statute." *Town of Wolfeboro v. Smith*, 131 N.H. 449, 453, 556 A.2d 755, 757 (1989). In other words, this Court has the obligation to "presume that 'the legislature does not enact unnecessary and duplicative provisions.'" *State v. Powell*, 132 N.H. 562, 568, 567 A.2d 568, 572 (1989).

The statute, RSA 479:25, II (Supp. 1990), specifies three categories of persons entitled to notice: mortgagors, record owners, and record lienholders. If the term "owner" were really intended to mean "anyone with a recorded interest in the premises," as Bio-Energy suggests, there would be no reason to include lienholders and mortgagors within the protections of the statute. The words "lienholders" and "mortgagors" would be redundant. Because this Court must assume that the legislature did not enact a redundant provision and meant to give meaning to all of the words in the statute, *see Town of Wolfeboro v. Smith supra*; *State v. Powell supra*, I would hold that the word "owner" refers to a smaller, more specific class of persons than Bio-Energy suggests. As a lessee, Bio-Energy does not fall within this class.

Finally, to the extent that the phrase "then record owner of the premises" can be said to be ambiguous, this Court may look to the

statute's legislative history for guidance. *See Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988). A review of the statutes preceding RSA 479:25, II reveals an expansion and then a contraction of the classes of persons entitled to personal notice of a foreclosure sale conducted pursuant to a power of sale mortgage. As the majority states, until 1923, no class of persons was entitled to personal notice. *See* Laws 1899, 19:3; Laws 1905, 2:1; Laws 1923, 115:1. Mortgagors were given the right to personal notice in 1923. Laws 1923, 115:1. In 1977, the legislature amended the statute to require personal notice to be given to "a grantee of the mortgagor or the then-owner of the mortgaged premises and any person claiming a lien or other encumbrance upon the premises," as well as to the mortgagor. Laws 1977, 401:1. When this version of RSA 479:25, II was amended in 1979, the language "a grantee of the mortgagor" and "or other encumbrance" was stricken. Laws 1979, 224:1. Again, this Court must assume that the legislature had a reason for deleting those words. *See Town of Wolfeboro v. Smith supra; State v. Powell supra.*

The majority is also correct in stating that "ordinarily, any material change in the language of the original act [the 1977 law] is presumed to indicate a change in legal rights," a legal proposition which supports my statutory construction argument in this case. However, they further cite to law which holds that if the original act is ambiguous the presumption can be rebutted, and the amending provisions may be viewed as an attempt to resolve the ambiguity. Nevertheless, the evidence relied upon by the majority to rebut the presumption is less than persuasive. Not only is there no evidence that the legislature believed the 1977 statute was ambiguous; there is no mention of any ambiguity in the legislative history of the 1977 amendment, nor is there a ruling by this Court addressing this issue. Moreover, there is no evidence that points clearly to a legislative intent to clear up an ambiguity. The only statement relied upon by the majority is that of a legislator who believed the new version of the bill "cleans up the law," a statement consistent with the presumption, but clearly not one indicating the factors necessary for the exception to the general rule.

Furthermore, when interpreting the language of a statute, "[t]he question is, not what views upon the point some member [] of the legislature . . . may have entertained, but what is the effect and meaning of the language of the act finally ratified and adopted by the legislature." *Pollard v. Gregg*, 77 N.H. 190, 194, 90 A. 176, 178 (1914). The effect of the legislature's deletion of the words "grantee of the

mortgagor" and "or other encumbrance" is to restrict entitlement to personal notice to only the "then record owner of the premises." Bio-Energy is not the record owner of the premises in question, thus it is not entitled to personal notice of the foreclosure sale. At best, Bio-Energy is an owner of a leasehold in the premises, not of the premises themselves. As such, Bio-Energy is a grantee of the mortgagor, but not the record owner of the mortgaged premises, and is no longer in the class of persons entitled to notification. By expanding the notification requirements of RSA 479:25, II (Supp. 1990), the majority relies upon a supposed legislative intent which is neither expressed in the language, nor consistent with the history, of the act itself. *See Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979), *appeal after remand*, 120 N.H. 665, 421 A.2d 1005 (1980). The more logical explanation for the legislature's action is that the legislature wished to narrow the class of persons entitled to personal notice in the case of a foreclosure under a power of sale mortgage. Thus, the phrase "then record owner of the premises" cannot be given a meaning expansive enough to include a lessee.

Bio-Energy also maintains that its leasehold interest is equivalent to a lien on the premises, and thus qualifies it for coverage under RSA 479:25, II (Supp. 1989) (written notice must be given to "any person having a lien on the premises of record"). This argument is untenable. A "lien" is defined as "[t]he right which the law gives to have a debt satisfied out of a particular thing; a proprietary interest which, in a given case, may be exercised over the property of another." BALLENTINE'S LAW DICTIONARY 737 (1969). Bio-Energy's leasehold interest does not meet this definition. Bio-Energy has no right to sell the leased premises in order to have a debt satisfied.

Bio-Energy further argues that a lease cannot be terminated by a foreclosure sale where the lessee was not given proper notice of the sale. However, the validity of Bio-Energy's lease is not at issue here, and that argument need not be addressed. Bio-Energy wishes to intervene in Snyder's equity action in order to challenge the validity of the foreclosure sale. Whether Bio-Energy's lease survives a foreclosure sale is irrelevant to the issue of whether Bio-Energy was entitled to personal notice of the sale.

Finally, Bio-Energy argues that, to the extent that RSA 479:25, II does not require that personal notice of a power of sale mortgage foreclosure be given to a lessee, it is violative of due process. This argument was not raised below, and therefore this Court cannot address it on appeal. *See State v. Stearns*, 130 N.H. 475, 486, 547 A.2d 672, 678 (1988).

Because the trial court did not, as a matter of law, err in finding that Bio-Energy had no right to notice under RSA 479:25, II, its denial of the motion to intervene was proper. For the above reasons, I respectfully dissent.