Grafton
No. 91-438

## SAMYN-D'ELIA ARCHITECTS, P.A.

v.

## SATTER COMPANIES OF NEW ENGLAND, INC.

## I. MICHAEL WINOGRAD

v.

## SAMYN-D'ELIA ARCHITECTS, P.A.

May 11, 1993

*John J. McCormack*, of Ashland, by brief and orally, for Samyn-D'Elia Architects, P.A.

*I. Michael Winograd* and *Daniel C. Proctor*, of Concord, (*Mr. Winograd* and *Mr. Proctor* on the brief, and *Mr. Proctor* orally), for I. Michael Winograd.

*Satter Companies of New England, Inc.* filed no brief.

THAYER, J. Samyn-D'Elia Architects, P.A. (Samyn-D'Elia) appeals the Superior Court's (*Smith*, J.) allowance of I. Michael Winograd's motion to intervene and subsequent motion for summary judgment that invalidated Samyn-D'Elia's attachment on property formerly owned by Satter Companies of New England, Inc. (Satter). Because we hold that Winograd is not a true party in interest and therefore had no standing to intervene or seek summary judgment, we reverse.

In March 1990, Samyn-D'Elia brought suit against Satter for the payment of services rendered and filed a petition for *ex parte* attachment of Satter's property in Coos and Grafton counties. The attachment was granted on March 28, 1990, and Samyn-D'Elia was ordered to make the attachments and complete service on Satter within twenty days. The attachment was served upon the register of deeds in both counties within twenty days, but service on Satter was not made until twenty-three days after the court order. Although Samyn-D'Elia filed a motion to amend the return date in May 1990, which was granted without objection, Samyn-D'Elia filed no motion to extend the time limit to serve Satter. Satter did not file an appearance at any time during the proceedings and was defaulted.

Samyn-D'Elia's attachment of Satter's property was one of many. Satter experienced financial difficulty and defaulted on a mortgage held by First NH Mortgage Corp. (First NH) on the Forest Ridge Condominiums in Lincoln. First NH retained Attorney Winograd to conduct a title search before exercising the power of sale contained in the mortgage. Winograd hired a title company to conduct the search for him. He informed First NH that there were more than thirty subordinate lienholders, but failed to disclose the existence of Samyn-D'Elia's lien. As a consequence, First NH did not provide notice of the foreclosure sale to Samyn-D'Elia. First NH purchased the Forest Ridge Condominiums at the foreclosure and believed that all subordinate lienholders were discharged.

In August 1990, First NH found a buyer for the property and set a closing date. The buyer conducted a title examination that revealed

that Samyn-D'Elia had not been notified of the foreclosure sale and that its lien had not been discharged. First NH informed Winograd that he would be held liable for any costs incurred in discharging Samyn-D'Elia's lien. Winograd reviewed the pleadings in the action between Samyn-D'Elia and Satter and discovered that service on Satter had not been completed within twenty days, as ordered by the court.

On August 8, 1990, Winograd filed a petition against Samyn-D'Elia to quiet title to the property formerly owned by Satter, which First NH purchased at the foreclosure sale. Winograd also sought damages for slander of title and, in the alternative, equitable and declaratory relief. An emergency hearing was held because of the impending sale between First NH and the prospective buyer. The court ordered Winograd to post an irrevocable letter of credit and vacated Samyn-D'Elia's attachment. Winograd moved to intervene in the civil action brought by Samyn-D'Elia against Satter. Samyn-D'Elia objected to Winograd's appearance in the equitable action and his motion to intervene in the civil action. On March 19, 1991, Winograd's motion to intervene in the civil action between Samyn-D'Elia and Satter was granted, and Winograd's equitable action was consolidated with the civil action.

Winograd moved for summary judgment on the ground that Samyn-D'Elia's writ of attachment recorded in the Grafton County Registry of Deeds did not represent a valid, choate, or vested right because Samyn-D'Elia did not comply with the court order to complete service upon Satter within twenty days. The court granted summary judgment in the civil case brought by Samyn-D'Elia against Satter on July 8, 1991, and denied Samyn-D'Elia's motion for reconsideration. Winograd subsequently filed a voluntary nonsuit of his equitable action against Samyn-D'Elia.

On appeal, Samyn-D'Elia raises several issues, one of which is dispositive. Samyn-D'Elia argues that it was error for the superior court to grant summary judgment in favor of Winograd based on the pleadings before it. Winograd contends that this court should not review the issue of his status as an intervenor in the civil action because Samyn-D'Elia's brief addresses whether Winograd was a proper party to bring the equitable action. We disagree.

■ In both its notice of appeal and its brief before this court, Samyn-D'Elia asks us to review the pleadings in this case and argues that the issues raised in those pleadings were sufficient to demonstrate that Winograd was not entitled to summary judgment in the

civil action. Samyn-D'Elia objected below to Winograd's motion to intervene, and its brief contains the same arguments it raised below. New Hampshire Supreme Court Rule 16(3)(b) provides that issues raised in the notice of appeal "will be deemed to include every subsidiary question fairly comprised therein." Winograd's status as an intervenor presents a subsidiary question to the ultimate issue of whether he was entitled to summary judgment. Accordingly, we will address this issue.

■■ It is within the trial court's discretion to grant intervenor status. *Scamman v. Sondheim*, 97 N.H. 280, 281, 86 A.2d 329, 330 (1952). A trial court's decision to grant intervenor status will not be overturned unless we are persuaded that the court abused its discretion. *Snyder v. N.H. Savings Bank*, 134 N.H. 32, 34, 592 A.2d 506, 507 (1991). In order for a person to intervene in a case, that person "must have a right involved in the trial and his [or her] interest must be direct and apparent." *Id.* at 35, 592 A.2d at 507 (quotations and emphasis omitted).

Winograd had no legal right in the dispute between Samyn-D'Elia and Satter because the dispute was simply a collection matter pursuant to a private contract. Nor did he have a direct and apparent interest in the contract action itself. He was not in privity with Satter, he was not acting as Satter's agent, and he did not make a claim of ownership against the Forest Ridge Condominiums that would be affected by the writ of attachment in favor of Samyn-D'Elia. To the contrary, Winograd concedes that he does not stand in the same position as Satter with respect to proceedings brought by Samyn-D'Elia; he contends that he "stands in the shoes" of First NH. This argument is based on the fact that First NH informed Winograd that it would hold him liable for any losses occasioned by the lack of notice to Samyn-D'Elia before the foreclosure sale. Winograd, however, has seriously misconstrued his appearance before this court as the interests he seeks to protect are solely his own.

■ First NH never retained Winograd to intervene in the civil litigation between Samyn-D'Elia and Satter, nor did it direct him to bring an equitable action in his own name. Winograd did not file an appearance on behalf of First NH; thus, he is not authorized to represent it or determine its rights, duties, or liabilities. *See* SUPER. CT. R. 15. In his memorandum in support of his motion to intervene, Winograd describes his "interest" in the litigation by noting that the person he hired to conduct the title search for First NH had not found Samyn-D'Elia's recorded attachment. He then states:

"It was also at that time that I. Michael Winograd was first advised that [the title examiner] had no malpractice insurance to cover the error. Therefore, I. Michael Winograd would be liable on the error and would not have recourse against the title examiner. As I. Michael Winograd's malpractice policy contains a Ten-Thousand Dollar ($10,000.00) deductible, I. Michael Winograd would directly suffer if Samyn D'Ellia [*sic*] was issued a judgment in this proceeding . . . ."

 Winograd was able to inject himself into private litigation in which he had absolutely no interest or right other than the hope of preventing First NH from bringing a malpractice action against him, an action that also would be unrelated to the litigation between Samyn-D'Elia and Satter. We hold that this type of "interest" in a case will not support a grant of intervenor status. The trial court abused its discretion by allowing Winograd to intervene and erroneously granted his motion for summary judgment. In so ruling, we need not decide whether the superior court properly dissolved the default judgment against Satter when it allowed Winograd to intervene, or the propriety of its interpretation of RSA 511-A:5 (1983).

*Reversed.*

HORTON, J., with whom JOHNSON, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The majority would deny the obligor on the letter of credit, substituting for the attachment lien, the opportunity to challenge the validity of that lien. The majority holds that the obligor has no direct and apparent interest that would support the trial court's permission to intervene in the matter. On this basis, the majority holds that the trial court erred in granting the motion to intervene and in granting the intervenor's motion for summary judgment, invalidating the attachment for failure to satisfy timely completion of service.

I do not read Samyn-D'Elia's appeal as being a challenge to the trial court's order permitting intervention and filing of a letter of credit. Samyn-D'Elia is disturbed about the order invalidating its attachment. It takes a passing shot at the obligor's standing to bring a collateral quiet title action, but it is very happy to have the letter of credit on file for easy collection, should the attachment be reinstated.

If this were an uncomplicated attempt by the obligor, Mr. Winograd, to intervene to challenge the merits in the collection case insti-

tuted by Samyn-D'Elia against the defendant Satter Companies, I would agree with the majority. Such is not the case. This proceeding has no bearing on the merits of the architect's claim. That portion of the case has been defaulted, and, clearly, the architects' association has a valid and enforceable right to judgment against Satter Companies. The merits are fully and conclusively resolved. Before us is a collateral proceeding relating to enforcement of that judgment. *See Center for Gastrointestinal Medicine, Inc. v. Willitts*, 137 N.H. 67, —, 623 A.2d 752, 754 (1993). Called into question is the validity of an attachment lien on real estate, formerly owned by the defendant Satter Companies, later owned by the foreclosing bank, and then owned by the grantee of the bank. Substituting for the real estate is a letter of credit with Mr. Winograd as the obligor. This is a completely different ballgame, with different players. Satter Companies, having lost the burdened asset by foreclosure, no longer has any interest in the collateral matter, at least not as an obligor.

Mr. Winograd is more than an officious intermeddler who likes the looks of his letter of credit on the face of this case. The architects held an attachment, purportedly securing judgment on their collection case and burdening Satter Companies' real estate. This attachment was junior to the bank mortgage. When the bank foreclosed on Satter Companies, assuming no excess on foreclosure, the architects would be wiped out on this asset. To accomplish this, the bank had to provide the statutory notice to junior lien holders. RSA 479:25, II (1992). Absent this notice, the foreclosure is not valid against the unnotified junior creditor. Arguably, since the senior lien has been foreclosed, it no longer exists, and the junior lien remains on the subject real estate. To avoid this result, and to assure that all junior liens were wiped out, the bank hired Mr. Winograd to advise them on the title. The architects' attachment was missed, and the mortgage foreclosure proceeded without notice to the attaching architects. When this error was later discovered, Mr. Winograd properly and forthrightly assumed the ultimate financial liability for the mistake. To speculate that the sale of the property by the bank might not have been consummated, or to envision the bank bearing the cost of another foreclosure and subsequently pursuing Mr. Winograd for malpractice, lends much less, in the way of comfort, than to picture the ultimate obligor promptly and directly assuming the obligation.

The trial court agreed with the latter procedure, allowing Mr. Winograd to intervene on the lien matter and to post appropriate

180

security so that the bank and the grantee land owner would not be prejudiced. At this point, Winograd had the sole, and a direct, interest in the lien obligation. To the extent that the lien was available to satisfy the judgment, Mr. Winograd was the only one, on the obligor side, who cared. It is natural and appropriate, at this point, that Mr. Winograd check to make sure the attachment lien is valid, and to assert any claim of invalidity.

I would find it well within the trial court's discretion to permit Mr. Winograd to challenge the validity of the attachment in this collateral proceeding. Having heard the challenge, I would also find that the trial court could exercise its discretion to refuse to extend the period for completion of service, and did not err in declaring an *ex parte* attachment invalid, when completion of service was made beyond the period allowed by the court attachment order. *Maine Nat'l Bank v. Baker*, 116 N.H. 185, 187, 355 A.2d 429, 430 (1975).

The trial court's decision should be affirmed.

JOHNSON, J., joins in the dissent.