Merrimack
No. 2009-699

CONCORD GENERAL MUTUAL INSURANCE COMPANY

v.

GREEN & COMPANY BUILDING AND DEVELOPMENT CORPORATION & a.

Argued: May 4, 2010
Opinion Issued: September 17, 2010

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for the petitioner.

*Bouchard, Kleinman & Wright, P.A.*, of Hampton (*Paul B. Kleinman* and *Shenanne R. Tucker* on the brief, and *Ms. Tucker* orally), for respondent Green & Company Building and Development Corporation.

*McDonough, O'Shaughnessy, Whaland & Meagher, P.L.L.C.*, of Manchester (*Robert G. Whaland* on the brief and orally), for respondent Middlesex Mutual Assurance Company.

CONBOY, J. In this declaratory judgment proceeding, respondent Green & Company Building and Development Corporation (Green) appeals an order of the Superior Court (*Brown*, J.) denying its cross-motions for summary judgment and granting summary judgment in favor of the petitioner, Concord General Mutual Insurance Company (Concord General), and respondent Middlesex Mutual Assurance Company (Middlesex Mutual). The trial court found that there was no "occurrence" as defined by the insurance policies issued by Concord General and Middlesex Mutual and concluded, therefore, that coverage for Green's indemnification claims was not required under either policy. We affirm.

The trial court found, or the record supports, the following facts. In March 2004, Green began a project in Lee, involving the construction of thirty-four homes to be known as Thurston Woods. Green contracted with Birch Masonry to build the chimneys in each of the homes. Birch Masonry was insured by Middlesex Mutual. Birch Masonry requested that Green be added to the policy as an additional named insured, and Middlesex Mutual complied. Throughout the construction, Green held its own commercial general liability policy with Concord General.

Soon after the homes at Thurston Woods were completed and sold, Green began receiving complaints about the chimneys, particularly regarding flue size. Green told the homeowners that it would make the appropriate repairs and bring the chimneys "to code." Eventually, however, the homeowners brought suits against Green in superior court. When the lawsuits were filed, Green made demand on Concord General to provide it with a defense and indemnification. Concord General agreed to provide Green with a defense pursuant to a reservation of rights.

While the suits were pending, Green placed carbon monoxide detectors in each of the homes and discovered unacceptable levels of carbon monoxide in several of them. Green also began receiving complaints that flue gases were seeping into the homes because of the defective chimneys. Green hired an independent company to conduct tests on all of the chimneys, and in every case, it discovered one or more problems known to lead to the escape of carbon monoxide. Subsequently, Green either paid to have the defective chimneys repaired or reimbursed those homeowners who had already made repairs. After the repairs were made, the homeowners' lawsuits against Green were either settled or withdrawn.

In the meantime, Concord General initiated this declaratory judgment proceeding against Green, Middlesex, and the homeowners to resolve the insurance coverage issues. After the homeowners' lawsuits were settled or withdrawn, the remaining parties filed motions and cross-motions for summary judgment. In arguing for summary judgment, Green argued, among other things, that the leaking carbon monoxide constitutes property damage and is therefore an "occurrence" under the policies. The trial court disagreed, and granted summary judgment in favor of Concord General and Middlesex Mutual. This appeal followed.

On appeal, Green argues that the trial court erred in finding that the leaking carbon monoxide did not constitute property damage and was therefore not an "occurrence." "We review *de novo* the trial court's application of the law to the facts in its summary judgment ruling." *Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 151 N.H. 649, 652 (2005). "All evidence presented in the record, as well as any inferences reasonably drawn therefrom, must be considered in the light most favorable to the party opposing summary judgment." *Id.* "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." *Id.*

Green argues that the carbon monoxide that seeped into the homes as a result of the faulty chimneys resulted in property damage and constitutes "occurrences" under both insurance policies. Concord General and Middlesex Mutual assert that the carbon monoxide caused no physical damage and that Green's claim is essentially for faulty workmanship, which they contend is not covered under the insurance contracts.

■■ "In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition." *Carter v. Concord Gen. Mut. Ins. Co.*, 155 N.H. 515, 517 (2007). "Our analysis necessarily begins with an examination of the policy language." *Webster v. Acadia Ins. Co.*, 156 N.H. 317, 319 (2007).

"The interpretation of insurance policy language is a question of law, which we review *de novo.*" *Id.* "We construe the language as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole." *Id.* at 319-20. "Policy terms are construed objectively; where the terms are clear and unambiguous, we accord the language its natural and ordinary meaning." *Id.* at 320.

Green's policy with Concord General and the Middlesex Mutual policy contain identical relevant language. Both policies provide coverage for "bodily injury" and "property damage" only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' . . . ." The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under both policies "property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

We have previously held that defective work, standing alone, does not constitute an occurrence. *See Hull v. Berkshire Mut. Ins. Co.*, 121 N.H. 230, 231 (1981). This is because "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 680 (1984). "Instead, what does constitute an occurrence is an accident caused by or resulting from faulty workmanship, including damage to any property other than the work product and damage to the work product other than the defective workmanship." 9A S. PLITT, D. MALDONADO & J. ROGERS, COUCH ON INSURANCE 3D § 129:4, at 129-13 to 129-14 (2005). "In other words, although a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes bodily injury or property damage to something other than the insured's work product." *Id.* at 129-14. Thus, to constitute an occurrence under the insurance policies, Green must have suffered damage to property other than the work product — in this case, the chimneys. "Property suffers physical, tangible injury when the property is altered in appearance, shape, color or in some other material dimension." *Webster*, 156 N.H. at 320.

Green asserts that the entry of carbon monoxide into the homes was itself physical injury to tangible property. Relying on *Essex Insurance Co. v. Bloomsouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009), Green contends that the seepage of carbon monoxide and other gases into the home constitutes an alteration in a material dimension. In *Essex*, the insured was sued when one of its subcontractors installed defective carpet that gave off an offensive odor. *Id.* at 401. The court ruled that the insurer had a duty to defend the insured because the facts of the underlying complaint alleged a physical injury. *Id.* at 406. The court found that an odor can constitute a physical injury and that the complaint alleged that the odor permeated the building, resulting in a loss of use and physical injury. *Id.*

In this case, however, the carbon monoxide and other gases caused no physical, tangible alteration to any property. The homeowners did not suffer the loss of use of any property other than their chimneys. Green concedes that the homeowners continued to occupy their homes and to use their furnaces throughout the heating season. None of the homeowners suffered bodily injury due to the gases, and the homeowners were not required to vacate their homes while the chimneys were being repaired. The only effect caused by the faulty chimneys was their loss of use. The loss of use of the insured's work product, standing alone, is not sufficient to constitute an "occurrence" under the policy.

Moreover, all of the repairs made to the chimneys were limited to correcting the faulty workmanship. The repairs were thus preventative in nature, made for the purpose of stopping carbon monoxide leaks before they caused any actual bodily injury or property damage. *See Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 416 (1992) ("damages" include only those costs which are remedial, not preventative). *But cf. M. Mooney Corp. v. U.S. Fidelity & Guaranty Co.*, 136 N.H. 463, 467-68 (1992) (where there was an occurrence and actual property damage caused by defective chimneys in a condominium project, repairs made to condemned chimneys that had yet to cause damage could properly be considered remedial).

Green contends that it would be an "absurdity" to require someone to become physically injured by the leaking gases before coverage under the policies is available. This argument misconstrues entitlement to insurance coverage. An insurance policy is a contractual obligation between the insured and the insurer. Insurers are free to limit their liability through clear and unambiguous policy language. *See Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 N.H. 27, 30 (1996). Here, Concord General and

Middlesex Mutual used clear and unambiguous language to provide coverage only for occurrences which cause bodily injury or property damage.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.