Hillsborough-northern judicial district
No. 2012-451

MARK CASE

v.

ST. MARY'S BANK

Argued: January 16, 2013
Opinion Issued: February 25, 2013

*Follender Law Offices, P.L.L.C.*, of Nashua (*Richard C. Follender* on the brief and orally), for the plaintiff.

*Nelson, Kinder + Mosseau, PC*, of Manchester (*Richard C. Nelson* and *Catherine B. Cosgrove* on the brief, and *Mr. Nelson* orally), for the defendant.

CONBOY, J. The plaintiff, Mark Case, appeals from an order of the Superior Court (*Garfunkel*, J.) granting summary judgment to the defendant, St. Mary's Bank (the Bank), and denying his cross-motion for summary judgment on his claims that the Bank engaged in trespass and violated RSA 540-A:2 (2007), :3 (Supp. 2012), and the New Hampshire Consumer Protection Act (CPA), *see* RSA ch. 358-A (2009). We affirm.

*I. Facts and Procedural History*

The following facts are drawn from the record. The plaintiff rented a third floor apartment in Manchester from Jean M. Marcelin. Marcelin purchased the property in 2007 and financed his purchase with two mortgages from the Bank.

In December 2010, the Bank conducted a foreclosure sale with respect to one of the mortgages. Before the foreclosure sale closed, Marcelin filed for bankruptcy, which stayed any further action. On January 26, 2011, the stay was lifted, and another foreclosure sale was scheduled for April 2011.

On January 25, more than two months before the rescheduled foreclosure sale, a pipe from the second floor apartment burst, causing a flood in the building, and, as a result, the City of Manchester (City) turned off water and electricity to the building. The plaintiff spoke about the problem to Marcelin, who denied that he still owned the property. The plaintiff then spoke about the problem to a Bank representative, and, on January 27, the representative asked the plaintiff to allow her, a plumber, and an electrician into the building. The plaintiff complied with this request. On February 7, the City placed a legal notice on the property's front door, stating that it was unsafe and prohibiting occupancy.

On March 17, the Bank was notified by the City that the property was uninhabitable and that Marcelin had ignored the City's repeated requests to repair it. The City stated that because of the "total lack of maintenance and disrepair of the premises," it was revoking the "Certificate of Compliance" that it had previously issued for the property. The City directed that there could be "no re-occupancy of the dwelling units in [the property]" without the City's written permission. The City informed the Bank: "Failure to comply with this order will result in the issuance of ordinance violation citations and court action." That day, the Bank changed the locks to the outside doors and boarded up the building's entranceways. On April 13, the Bank conducted another foreclosure sale at which there was a successful third-party bidder.

The plaintiff has not resided at the property since January 25, 2011. Although he leased another apartment on February 19, most of his possessions remained at the property. On April 21, when the Bank allowed him access to the apartment to remove his possessions, the plaintiff observed that his apartment door was "wide open" and subsequently alleged that many of his possessions were missing. The plaintiff did not remove all of his possessions from the apartment until May 7.

The plaintiff sued the Bank for violations of RSA 540-A:2 and :3 and the CPA, and for trespass. The parties filed cross-motions for summary judgment. In granting the Bank's motion and denying the plaintiff's motion, the trial court ruled that: (1) the Bank is not liable under RSA 540-A:2 or :3 because it is not a "landlord" as defined in RSA 540-A:1, I (2007); (2) the Bank did not "trespass" because its entry on the property was privileged; and (3) the Bank is not liable to the plaintiff under the CPA because it never engaged in "trade or commerce" with him. The plaintiff unsuccessfully moved for reconsideration, and this appeal followed. On appeal, the plaintiff challenges only the first two of the trial court's rulings — he has abandoned his CPA claim.

## II. Discussion

"We review *de novo* the trial court's application of the law to the facts in its summary judgment ruling." *Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp.*, 160 N.H. 690, 692 (2010) (quotation omitted). "All evidence presented in the record, as well as any inferences reasonably drawn therefrom, must be considered in the light most favorable to the party opposing summary judgment." *Id.* (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." *Id.* (quotation omitted).

### A. RSA Chapter 540-A Claims

The plaintiff first argues that the trial court erred when it decided that the Bank was not a "landlord" within the meaning of RSA chapter 540-A. Resolving this issue requires that we interpret the pertinent statutory provisions. We review the trial court's statutory interpretation *de novo. Town of Atkinson v. Malborn Realty Trust*, 164 N.H. 62, 67 (2012). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

RSA 540-A:1, I, defines a "[l]andlord" as "an owner, lessor or agent thereof who rents or leases residential premises including manufactured housing or space in a manufactured housing park to another person." The trial court concluded that the Bank did not meet this definition because it was neither an "owner" of the property nor Marcelin's "agent." The plaintiff argues that the Bank was the "owner" of the property either because it had legal title to the property or because it was a "mortgagee in possession." Alternatively, he asserts that when the Bank changed the locks to the property and boarded it up, the Bank acted as Marcelin's agent.

We first address the plaintiff's assertion that the Bank was the "owner" of the property under RSA 540-A:1, I, because the Bank had legal title to it. In making this argument, the plaintiff mistakenly relies upon *Snyder v. New Hampshire Savings Bank*, 134 N.H. 32 (1991). In *Snyder*, we interpreted a different statute — RSA 479:25, II (Supp. 1990). The issue in that case was whether a lessee with a recorded lease was entitled to notice of a foreclosure given statutory language that required notice be given to the mortgagor or "the then record owner of the premises." *Snyder*, 134

N.H. at 34 (quotation omitted). Because we found the phrase "the then record owner" was "potentially ambiguous," we consulted legislative history. *Id.* at 35-36. Based upon our review of that history, we concluded that the phrase referred to the grantee of the mortgagor. *Id.* at 36-37. We decided that because the mortgagor conveyed a leasehold to the lessee, the lessee was a "grantee of the mortgagor." *Id.* (quotation omitted). Additionally, because the lease had been recorded, we concluded that the lessee was a "record owner of the premises." *Id.* at 37 (quotation omitted). Thus, we reasoned, the lessee was entitled to notice of the foreclosure. *Id.*

The plaintiff observes that in *Snyder* we stated that the word "owner" in RSA 479:25, II means "all persons who have an interest in the property." *Id.* He urges us to apply this definition to the word "owner" in RSA 540-A:1, I, and hold that because the Bank clearly has an interest in the property, the Bank "owns" it. We decline his invitation.

The plaintiff ignores the fact that our decision in *Snyder* was based upon the legislative history of RSA 479:25, II, which led us to conclude that the word "owner" in RSA 479:25, II was intended to refer to "all persons" with an interest in the property. *Id.* The legislative history of RSA 479:25, II is not relevant to our interpretation of RSA 540-A:1, I.

Moreover, the plaintiff does not argue that the word "owner" as used in RSA 540-A:1, I, is ambiguous and that resort to the legislative history of RSA 540-A:1, I, is warranted. Indeed, he contends that the word "owner" should be interpreted according to its plain meaning, observing that the dictionary defines an "owner" as "one that has the legal or rightful title, whether the possessor or not." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1612 (unabridged ed. 2002).

█ We disagree with the plaintiff that the mere fact that the Bank had legal title to the property by virtue of its mortgage made it an "owner" for the purposes of RSA chapter 540-A. New Hampshire is one of fewer than ten jurisdictions that follow some form of the "title" theory of mortgages. 1 G. NELSON & D. WHITMAN, REAL ESTATE FINANCE LAW § 4.1, at 193 (5th ed. 2007); *see Land America Commonwealth Title Ins. Co. v. Kolozetski*, 159 N.H. 689, 692 (2010). "Under the title theory, legal 'title' is in the mortgagee until the mortgage has been satisfied or foreclosed . . . ." 1 G. NELSON & D. WHITMAN, *supra* § 4.1, at 191. In New Hampshire, "a mortgage in theory is a conditional conveyance that passes legal title to the property in fee to the mortgagee; the mortgagor, however, retains equitable title." *Kolozetski*, 159 N.H. at 692.

█ Although a mortgagee has legal title to the property, "[w]e have held that [it] is *not* to be regarded as the owner of the land." *Lyman v. Hibbard*, 18 N.H. 233, 233 (1846) (emphasis added); *see Orr v. Hadley*, 36 N.H. 575,

578 (1858). "The mortgagor of real estate, as against all persons except the mortgagee and those holding his rights under the mortgage, is the owner of the estate mortgaged." *Orr*, 36 N.H. at 578; *see City of Chicago v. Sullivan Machinery Co.*, 109 N.E. 696, 701 (Ill. 1915) ("The mortgagee is the legal owner for only one purpose, while, at the same time, the mortgagor is the owner for every other purpose and against every other person. The title of the mortgagee is anomalous, and exists only between him and the mortgagor and for a limited purpose." (quotation omitted)); 1 G. NELSON & D. WHITMAN, *supra* § 4.1, at 193 ("Title theory states today generally recognize that the mortgagee holds title for security purposes only, and that, except as between the mortgagor and the mortgagee or one claiming under him, the mortgagor, for practical and theoretical purposes, is to be regarded as the owner of the land."). Under our common law, the mortgagee is not deemed the "owner" until "the mortgagee sees fit to assert [its] rights as the owner of the estate," such as by becoming a "mortgagee in possession." *Lyman*, 18 N.H. at 233, 234; *see Lyford v. Laconia*, 75 N.H. 220, 226 (1909) ("[U]ntil the mortgagee has entered under his mortgage[,] the mortgagor is the owner of the land."); *cf.* 2 M.T. MADISON ET AL., THE LAW OF REAL ESTATE FINANCING § 12:17 (rev. ed. 2012) ("Generally, the mortgagee does not incur responsibility for the mortgaged premises unless it undertakes the role of a mortgagee in possession or acquires ownership through a foreclosure sale.").

 "[W]e will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention." *Hill v. Dobrowolski*, 125 N.H. 572, 575 (1984). Because the legislature has not clearly expressed its intention to abrogate our common law regarding when a "mortgagee" may be deemed an "owner" of real property, we construe the word "owner" as used in RSA 540-A:1, I, to be consistent with our common law. Accordingly, we reject the plaintiff's contention that the Bank was an "owner" merely because it held legal title to the property.

██ We turn next to the plaintiff's assertion that the Bank was an "owner" because it was a "mortgagee in possession." "A mortgagee in possession . . . is a mortgagee who takes possession of the mortgaged land by virtue of the contract between him and the mortgagor." *Davis v. Savage*, 168 P.2d 851, 863 (N.M. 1946) (quotations omitted). When a mortgagee becomes a mortgagee in possession, the mortgagee "assume[s] the normal responsi-bilities of an owner or possessor of real estate." 1 G. NELSON & D. WHITMAN, *supra* § 4.46, at 375; *see Brown v. Simons*, 44 N.H. 475, 478 (1863) (mortgagee in possession "assumes the duties of provident owner"). Thus, for instance, a mortgagee in possession is responsible for repairing and maintaining the property. *See Touma v. St. Mary's Bank*, 142 N.H. 762,

768 (1998). In effect, by becoming a mortgagee in possession, a mortgagee becomes the property's "owner" as to third parties, not just as to the mortgagor. *See Town of Bristol v. United States*, 315 F. Supp. 908, 911 (D. Vt. 1970).

■ "In order to qualify as a mortgagee in possession, the mortgagee must have possession of the premises *qua* mortgagee. What constitutes such possession varies with the nature and condition of the property." 1 G. NELSON & D. WHITMAN, *supra* § 4.25, at 286. "[A] mortgagee can be a mortgagee in possession without actually occupying the premises." *Id.* Moreover, "the general rule is that a holder of a mortgage, even though physically in possession of the premises, is not a mortgagee in possession unless he or she has possession under his or her mortgage and with the consent, express or implied, of the mortgagor." 54A AM. JUR. 2D *Mortgages* § 152 (2009). "[T]he standard is best expressed in terms of whether the mortgagee exercised 'dominion and control' over the mortgaged real estate." 1 G. NELSON & D. WHITMAN, *supra* § 4.25, at 286; *see* 1 W.H. BROWN, THE LAW OF DEBTORS AND CREDITORS § 8:7 (rev. ed. 2009) ("To obtain possession lawfully, the mortgagee must do so in compliance with the terms of the mortgage and must exercise dominion and control over the property."); 54A AM. JUR. 2D *Mortgages, supra* § 168 ("In order for a mortgagee to be responsible for damages to third parties caused by unsafe conditions on the property, the mortgagee must exercise dominion and control over the property.").

■ Whether a mortgagee has exercised dominion and control over the property and, thus, possessed it, "is a factual issue." 1 G. NELSON & D. WHITMAN, *supra* § 4.25, at 286. For instance, collection of rent alone by a mortgagee may not render the mortgagee a mortgagee in possession; however, the collection of rent and active management of the real estate "will probably suffice." *Id.* "In an apartment building, factors indicating a mortgagee's possession include the indicia of control that landlords normally exhibit," such as "leasing, making repairs, and paying bills." *Coleman v. Hoffman*, 64 P.3d 65, 69 (Wash. Ct. App. 2003). "Additional factors could include making management decisions and receiving and responding to tenant complaints." *Id.*; *see Citizens Savings & Trust Co. v. Rogers*, 155 N.W. 155, 159-60 (Wis. 1915) (Mortgagee who "employed janitors, provided fuel and elevator service, and . . . collected rents from the tenants of the buildings" exercised "the dominion and control over the property that is usually . . . exercised by a landlord," and was mortgagee in possession.).

■ Because the facts of this case are similar to those in *Blackstone Valley National Bank v. Hanson*, 445 N.E.2d 1093 (Mass. Ct. App. 1983), we find

*Blackstone* instructive. In *Blackstone*, as in this case, the mortgagee (a bank) "had not made an entry into possession for the purpose of foreclosure." *Blackstone*, 445 N.E.2d at 1093; *see* RSA 479:19 (2001) (setting forth process by which mortgagee may foreclose by possession). The mortgagee in *Blackstone*, like the Bank in this case, foreclosed on the property by exercising its power of sale. *Blackstone*, 445 N.E.2d at 1093; *see* RSA 479:22 (2001). Just as the mortgagee in *Blackstone* neither demanded nor received rent from the tenant in that case, so too the Bank neither demanded nor received rent from the plaintiff here. *Blackstone*, 445 N.E.2d at 1093. In *Blackstone*, although a representative of the mortgagee "visited the property on three or four occasions, asked the tenant to 'keep an eye on it,' and arranged and paid for emergency repairs and clean up work following the breaking of water pipes and the flooding of a building," the court ruled that this was insufficient to support a finding that the mortgagee was a mortgagee in possession. *Id.* at 1093-94. Similarly, here, we conclude that the Bank's representative's visits to inspect the damage from the water pipe bursting and the Bank's actions in response to the City's revocation of the property's "Certificate of Compliance" are insufficient to support a finding that the Bank was a mortgagee in possession. Because the Bank was not a mortgagee in possession, it was not an "owner" within the meaning of RSA chapter 540-A.

■■ The plaintiff argues, in the alternative, that the Bank acted as Marcelin's agent. "[T]he existence of an agency relationship is a question of fact." *Bouffard v. State Farm Fire & Cas. Co.*, 162 N.H. 305, 311 (2011). The necessary factual elements to establish agency are: "(1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions." *Id.* (quotation omitted). "Control by the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do." *Id.* at 312-13 (quotation omitted). Here, as the trial court correctly concluded, there were no facts to establish that Marcelin had any control over the Bank's actions. Accordingly, the Bank was not Marcelin's "agent" as a matter of law.

Because the Bank was neither an "owner" nor Marcelin's "agent," it was not a "landlord" as defined by RSA 540-A:1, I. Therefore, the trial court did not err when it granted summary judgment to the Bank on the plaintiff's claims that the Bank violated RSA 540-A:2, :3.

*B. Trespass*

The plaintiff contends that unless the Bank was an "owner" under RSA chapter 540-A, it had no right to change the locks or board up the building's entranceways, and, therefore, was liable for trespass. We disagree.

■ "[A] trespass [is] an intentional invasion of the property of another." *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54 (1972). Under the RESTATEMENT (SECOND) OF TORTS:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
>
> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

RESTATEMENT (SECOND) OF TORTS § 158 (1965).

■ ■ "Conduct which would otherwise constitute a trespass is not a trespass if it is privileged. Such a privilege may be derived from the consent of the possessor, or may be given by law because of the purpose for which the actor acts or refrains from acting." RESTATEMENT (SECOND) OF TORTS, *supra* comment *e* (citations omitted). One form of privilege is based upon the possessor's consent to the entry. RESTATEMENT (SECOND) OF TORTS, *supra* §§ 167-184. Another form of privilege derives from an actor's interest in the property at issue. RESTATEMENT (SECOND) OF TORTS, *supra* §§ 185-190. For instance, "[a] landlord is privileged, upon default in payment of rent, to enter the leased land at a reasonable time and in a reasonable manner in order to demand . . . the rent." RESTATEMENT (SECOND) OF TORTS, *supra* § 187. A third form of privilege arises regardless of the actor's interest in the land, such as to abate a private or public nuisance. *See* RESTATEMENT (SECOND) OF TORTS, *supra* §§ 191-211. Accordingly, to the extent that the plaintiff argues that the Bank could not have been privileged to enter the property unless it was the property's owner under RSA chapter 540-A, he is mistaken.

■ Here, the trial court determined that the Bank was privileged to enter by virtue of its mortgage agreement, which expressly allowed it to secure the property by "entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and

have utilities turned on or off." In light of the plaintiff's failure to argue that the trial court's determination was erroneous, we uphold it. Therefore, we affirm the trial court's grant of summary judgment to the Bank on the plaintiff's trespass claim.

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.