FREE & a. *v.* BUCKINGHAM & a.

A referee appointed by the parties, in a suit at law or in equity, under the statutes of this state, possesses the same authority as that of an arbitrator at common law, modified by statutory provisions.

A motion to set aside the report of a referee on the ground that it is against the evidence, presents a question of fact to be determined at the trial term.

Such motion will be granted upon the same grounds and the same evidence which would avail to set aside a verdict of a jury.

The question of fact presented by the motion is, whether the conflict between the report of the referee and the evidence is so strong that the

court can see that the referee, in coming to the result reported, was influenced by passion, prejudice, partiality, or corruption, or unwittingly fell into a plain mistake.

A mere scintilla of evidence is not sufficient to sustain an award; but it will not be set aside as against the evidence if there appear to have been any substantial proof upon which the referee could properly proceed to make the award.

Where the copy of a document is objected to in evidence because it is a copy and not an original, and the referee rules that the copy is admissible, but the instrument is not produced, and never comes to the hands of the referee, nor afterward becomes the subject of comment or discussion during the trial, the ruling, if erroneous, will not avail to disturb the referee's report.

Counsel who appear at the caption of a deposition, and cross-examine the deponent, will be deemed to have waived the objection that the deposition was not taken within the time nor with the formalities prescribed by the rules of court.

How far a witness may be examined as to his religious faith and practices, for the purpose of discovering his credibility, is a question of fact.

A person is competent to testify who believes in the existence of God, and that divine punishment will be the consequence of perjury; and his competency in this respect must be determined as a fact at the trial term.

The latitude of a cross-examination is regulated by the discretion of the tribunal before whom the trial is had, and is not subject to revision.

In Equity. The bill alleged a deed fraudulently made by the defendant Buckingham, as attorney of the plaintiffs, to the defendant Young, and contained a prayer that the deed be set aside, and for other relief. The cause was sent to a referee, selected by the parties, under the provisions of the Laws of 1876, *c.* 35, *s.* 2. He reported against Buckingham and Young, who moved to set aside the report on account of alleged erroneous rulings of the referee, and also because, as they claimed, it was against the evidence. The court reserved the questions of law arising upon the referee's report, and also the questions (1) whether the motion to set it aside as being against the evidence can be granted at a trial term, and (2) on what ground and on what evidence it can be granted.

Upon cross-examination of Mr. Free, one of the plaintiffs, the defendants' counsel asked him, " Are you a Spiritualist?" The question being objected to, the defendants' counsel claimed the right to make inquiries of this kind, " as effecting the credit of the witness." The witness answered several other questions of a similar character. The defendants' counsel finally inquired of the

witness whether the spirit of Daniel Webster was present aiding him in the trial of the cause, and whether he had received and availed himself of information from departed spirits, disclosing the character and the method of the defence.   The referee, being of the opinion that the examination on this point had proceeded far enough, rejected the last named questions, and others of a similar character, and the defendants excepted.

The plaintiffs were permitted to introduce in evidence, against the defendants' objection, a duly certified copy of the grant of Ervin's Location, the original grant being in the proper depository for such a document; but the copy never came to the hands of the referee, nor was the matter of the grant afterwards a subject of discussion before him.

During the trial the deposition of the defendant Shorey was taken, without the filing of any interrogatories in court, without the leave of any of its justices, and without the leave of the referee; but the counsel for the defendants attended the caption, and cross-examined the deponent.   The referee admitted the deposition, and the defendant excepted.

*Ray, Drew & Jordan* (with whom were *Ladd* and *Dudley*), for the defendants.

I.   Laws of 1876, *c.* 35, *ss.* 1, 2, provide that a referee in a chancery case shall proceed (unless the parties agree otherwise) according to the rules of equity, and the practice of the supreme court in equity causes.   The referee's report may be recommitted, or the cause sent to another referee, or such judgment rendered thereon as the law and facts require, which judgment shall be final and conclusive.   The parties did not otherwise agree: therefore the law and practice of the supreme court in equity causes should obtain.

The first question is, whether a motion to set aside a referee's report, as against the evidence, can be granted at the trial term instead of the law term.   We claim that the trial term is the only proper place to entertain our motion in the first instance.   Laws of 1870, *c.* 2, *s.* 1, provide that all suits in equity shall be entered, heard, and determined at or as of the trial term.   A careful reading of *s.* 3 would seem to indicate that only questions of law, arising in equity causes upon bills of exceptions or reserved cases, after the facts are found, may be carried into the law term for determination by the whole court.

The court, under the act of July 2, 1870 (as well as before), was authorized to frame and direct issues of fact in chancery cases, to be tried by the jury.   The provision in *s.* 3, that " no trial by jury shall be had except where such trial may now be had under existing laws," means simply that the whole matter of a jury trial in chancery cases shall be left to the discretion of the court.   That provision was enacted to put an end to an idea prevalent in the

state, to some extent, that a party, as a matter of right, was entitled to a trial by jury in every equity cause. Can any one doubt the court's authority to reject altogether the verdict of a jury upon issues of fact, framed and tried under the direction of the presiding judge? We think not. The most eminent English chancellors have sometimes set the verdict of a jury aside twice, and even three times. The court has precisely the same power over the report of any referee; and the simple question in any given case is, merely, What do equity and good conscience require? The idea is absurd that a motion of this character should be addressed to the referee himself.

II. On the second question reserved, On what ground and on what evidence can a motion to set aside the report of a referee, as being against the evidence, be granted? we contend that if, upon a careful examination of all the evidence adduced on the trial before the referee, the court shall come to a different conclusion; in other words, if the conscience of the court is persuaded that the referee's decision is wrong, that a judgment thereon would be unjust or inequitable, then our motion should prevail, and the report be rejected without hesitation. The opposite course would lead the court into the perpetration of wrong and injustice, and thereby thwart and prevent the prime end and object of all equity proceedings.

The rule commonly obtaining in a court of law, with reference to setting aside the verdict of a jury,—namely, that a verdict will not be set aside where there is evidence competent for the jury to consider, and the court submits it for their decision, although the court may be of the opinion that the evidence was insufficient to prove the fact, or that the verdict ought to have been the other way,—does not and ought not to prevail touching referees' reports in equity causes in New Hampshire.

In common-law proceedings, our court, as a rule, even abstains from expressing any opinion in regard to the weight of the evidence, upon the ground that a party possesses the constitutional right of having the facts of his case settled by the jury, and that it is not within the proper province of the court to attempt to influence or control the jury by expressing its own opinion to them upon the same matter.

In chancery proceedings, on the contrary, the whole duty of truly determining both law and fact rests upon the court alone. Therefore, in such cases the court is bound to exercise a closer and more careful surveillance, examination, and control of all the proceedings not had under its own immediate observation, than in ordinary common-law cases or proceedings. The reason of this is, that the court itself is, from the beginning, under the duty and responsibility of taking care that equity is done between litigants. See the well considered case of *Platt* v. *Platt*, 2 N. Y. (S. C.) 25, 52. Hence, upon its being shown to the court either that a referee's

report is against the evidence adduced before him, or that by new and additional evidence it is made to appear that a judgment upon the report would operate unjustly, and contrary to equity and good conscience, such report should at all events be set aside. Upon questions of fact the court will not interfere with the referee's findings where the testimony is conflicting, unless the clear weight of evidence shows he has erred. *Watson* v. *Campbell*, 28 Barb. 421 ; *Davis* v. *Allen*, 3 N. Y. 168. 173; *Scranton* v. *Baxter*, 4 Sandf. (N. Y.) 5 ; *Butler* v. *Truslow*, 55 Barb. 293.

*Marston, H. Bingham, Aldrich, Shurtleff, H. A. Fletcher, E. Fletcher,* and *Parsons,* for the plaintiffs.

FOSTER, J. The referee occupied no such position, and sustained no such relation to the court or the cause, as that of a master in chancery appointed to acquire and impart facts for the information of the conscience of the court; but he sustained toward the cause, the parties, and the court precisely the position of an arbitrator at common law, with no other restriction of his powers or duties than the requirement that he proceed according to the rules of equity and the practice in court, and report his decision, stating specifically his rulings upon all questions of law and all matters of fact found proved, if so requested by either party. Laws of 1876, *c.* 35, *ss.* 1, 2. This duty he has performed, and his report is before us.

I. The defendants move that it be set aside, as against the evidence. Under this motion, the first question reserved is, Can the motion be granted at the trial term? To this we reply, It can be granted at the trial term, and will not ordinarily be considered by the full bench. *Fuller* v. *Bailey*, 58 N. H. 71 ; *Lefavor* v. *Smith*, *ib.* 125; *Kelley* v. *Woodward*, *ib.* 153; *Hill* v. *New Haven*, 37 Vt. 501, 512. In this respect a referee's report is like the verdict of a jury.

II. The second question is, On what ground and on what evidence can it be granted? To which we reply, On the same ground and the same evidence which would avail to set aside the verdict of a jury for the cause alleged. There is no distinction between suits at law and in equity in this respect. *Clark* v. *Cong. Soc.*, 45 N. H. 331. The question presented upon such a motion at the trial term is, whether the conflict between the verdict, or the award and the evidence upon which it is founded, is so strong that the court can see that the jury (or the referee) were influenced by passion, prejudice, partiality, or corruption, or unwittingly fell into a plain mistake. *Rand* v. *Redington*, 13 N. H. 72 ; *Clark* v. *Cong. Soc.* and *Fuller* v. *Bailey,* before cited.

On a motion to set aside the report of a referee, as being against the evidence, the judge cannot be controlled by what appears in the report, because the report does not show what the evidence was, but only the facts which the referee found from the evidence.

Some of the facts reported may show that other facts reported, being inferred by the referee from the former, cannot fairly be inferred from them. There may be such an inconsistency in a report of a referee, as well as in a verdict of a jury. But usually the report states only facts, without showing from what other facts (*i. e.*, from what evidence) they were inferred. And the evidence from which the ultimate and decisive facts are found by the referee is the very thing which it is the duty of the referee not to report, and the very thing which the judge must learn in some way before he can intelligently decide the motion to set aside the report as against the evidence. The referee not being the proper person to pass upon the question of rejecting or sustaining his own report, that question must be determined by the court at the trial term, to whom some evidence of the evidence before the referee must be produced. And if it appears that there was any substantial evidence on which the referee might have based his finding, the report will not be set aside, because it may appear to the judge that possibly, or probably, he might have reached a different conclusion upon the evidence. *Clark* v. *Cong. Soc.*, before cited; *Cummings* v. *Centre Harbor*, 57 N. H. 17. On the contrary, if it appears that the report is so decidedly against the evidence as to lead to the conclusion that the referee must have been misled, or improperly influenced, or have failed to consider intelligently the evidence laid before him, then the report should be set aside as being against the evidence. *Jewell* v. *Railway*, 55 N. H. 84, 95.

We do not mean to say that a mere scintilla of evidence would suffice to sustain an award; but, in the absence of any evidence of prejudice, partiality, or corruption, or a manifest mistake on the part of the referee, the award must stand, if there appear to have been any substantial evidence upon which the referee could properly proceed to find an award in favor of the party producing it, upon whom the burden of proof was imposed. *Commissioners* v. *Clark*, 94 U. S. 278, 284; *Paine* v. *Grand Trunk Railway*, 58 N. H. 611; *Giblen* v. *McMullen*, L. R., 2 P. C. App. 317, 335; *Ryder* v. *Wombwell*, L. R., 4 Ex. 32.

Upon the question of passion, prejudice, partiality, or corruption (involving the question whether the referee has fairly reported all the facts), evidence *dehors* the report is admissible.

The object of the reference law of 1876 was to substitute a referee for a jury in the trial and determination of those cases in which the parties should consent to such reference, and without consent in cases wherein the parties are not, as matter of right, entitled to a trial by jury; to substitute an award for a verdict, and to make it subject to the same rules which govern and control, sustain or set aside, verdicts. An award of referees and a verdict of a jury will be set aside on similar grounds. *Rand* v. *Redington*, 13 N. H. 72, 77.

III. It does not clearly appear from the referee's report for what

purpose the copy of the grant of Ervin's Location was offered in evidence, nor in what respect it or its original was material. From the statement of the referee, that the copy never came into his possession, nor was alluded to in any discussion of the case after he had ruled it in, it would not seem that it was regarded by anybody as of any consequence. In their oral arguments, counsel insist that the original document would not have been admissible, and so, of course, the copy should have been excluded;—but no such objection was taken at the trial, and it cannot be considered now. The objection was to the copy "instead of the original grant;" to the copy, because it was a copy and not the original. It is manifest that the evidence which the referee ruled in, but which was practically excluded, since the referee never saw it at all nor heard of it afterward, did not affect the course of the trial nor the result.

IV. Counsel for the defendants having attended the caption of Shorey's deposition, and cross-examined the deponent, must be taken to have waived the exception, that the deposition was not taken upon written interrogatories previously filed in court, nor by special order of a judge of the supreme court.

V. There was no error of law in the referee's refusal to allow the plaintiff, Mr. Free, to be asked, on cross-examination, whether the spirit of Daniel Webster was present aiding him in the trial, and whether he had been assisted by departed spirits in obtaining information of the defence. Nor would it have been error of law to allow those questions to be put. It was a question of fact how far the proposed inquiry could usefully go for the purpose of discovering the credit of the witness. His testimony or other evidence might have been of such a character that light would be thrown upon it by a disclosure of his spiritualistic faith or practice; and his testimony and the case might have been such that there was no occasion to call for any disclosure on that subject.

VI. It is not claimed that the peculiarity of Free's religious belief affected his capacity as a witness, but only his credibility. Upon cross-examination, a witness may be asked any questions which tend to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character; and to this end his way of life, his associations, his habits, his prejudices, his mental idiosyncracies (if they affect his capacity), may all be relevant. Step. Dig. of Ev., Art. 129; 1 Gr. Ev., s. 446. But it is not customary in modern practice to permit an inquiry into a man's peculiarity of religious belief. This is not because the inquiry might tend to disgrace him, but because it would be a personal scrutiny into the state of his faith and conscience contrary to the spirit of our institutions. N. H. Bill of Rights, Arts. 4, 5; Const. of U. S., First Amendment. A man is competent to testify who believes in the existence of God, and that divine punishment, either in this life or in the life to come, will be the consequence of perjury. *Clinton* v. *The State*, 33 Ohio 27. No judicial tribunal is bound to inquire,

nor ordinarily will inquire, whether a witness be a Protestant or Romanist, Trinitarian or Unitarian, a Shaker, Mormon, Jew, or Gentile, a Spiritualist or a Materialist. Defect of religious faith is never presumed.

The question whether a person is disqualified to testify by want of belief in God and punishment for perjury, is a question of fact 'for the determination of the presiding judge,—in this case, the referee. *Com.* v. *Hills,* 10 Cush. 530, 532; 1 Gr. Ev., *ss.* 369, 370, and notes; Best Principles of Ev., *s.* 161.

· The range of the cross-examination was regulated by the discretion of the referee; and that discretion is not a matter for our revision. *Gutterson* v. *Morse,* 58 N. H. 165. If in any case the court will revise the ruling of a trial judge upon the question of the competency of a witness, as affected by his religious belief, there is no occasion for such revision in the present case.

*Exceptions overruled.*

DOE, C. J., did not sit: the others concurred.