Coos
No. 83-295

ALAN S. BROOKS AND JILL BROOKS

v.

ANTHONY A. PADULA

November 9, 1984

*Ingram & Ingram,* of Whitefield (*William A. Ingram* on the brief and orally), for the plaintiffs.

*Thomas M. Pancoast,* of Littleton, by brief and orally, for the defendant.

SOUTER, J. The plaintiffs brought a civil action in the superior court to resolve disputes over land boundaries and water rights. The defendant moved to refer the case to a master, and the plaintiffs objected. Following some procedural confusion not now relevant, the objection was heard before a Master (*R. Peter Shapiro,* Esq.). He recommended that the court overrule the objection to the reference to the master, and he refused to recommend that the court authorize an interlocutory appeal under Rule 8 of this court. The Superior Court (*Dunn,* J.) approved the master's recommendation.

Following trial on the merits before the same master, the plaintiffs moved for rehearing of their objection to referring the case to a master, and they also moved to set aside the master's report on the merits. The court denied these motions, and the plaintiffs appealed. At their request, we have severed the possible grounds for review and in this proceeding have considered only the appeal based on the objection to the master. We affirm.

As a preliminary matter, we must determine the scope of the issues that we may properly address. The plaintiffs seek to litigate claims under both the State and National Constitutions. The defendant argues that the plaintiffs did not raise those claims in a timely fashion in the superior court. We agree.

The plaintiffs' written objection to a reference to a master cited no authority, but rested on the allegation that the defendant's counsel sat frequently as a master himself. They argued that at some time in the future the presiding master might appear as counsel in a case to be tried before defendant's counsel sitting as a master. While they

did not claim that this possibility would necessarily result in actually prejudicing the presiding master, they objected that "the appearance of justice would be ill served" if a master presided over the case.

The master ruled on that written objection at a hearing on August 9, 1982. There is no transcript of that hearing. From the master's report, however, we infer that at the hearing the plaintiffs raised a second issue in support of their objection, for the report describes the plaintiffs' objection as resting on two grounds: the fact that the defendant's counsel often sat as a master and the lack of statutory authority to appoint any master except a retired justice under RSA 491:23. There is no indication, however, that the plaintiffs raised any constitutional claim.

The only reference to a constitutional claim occurs in a document entitled "Statement of the Question" dated four days after the master recommended that the objection be overruled. This document states the issue as the plaintiffs wished to appeal it on an interlocutory basis, and it does cite the State Constitution. But this document does not indicate in any way that a constitutional claim was raised in support of the original objection. We therefore conclude that the plaintiffs have not met their burden to demonstrate that constitutional issues were timely raised in the trial court. *See Daboul v. Town of Hampton*, 124 N.H. 307, 471 A.2d 1148 (1983). The constitutional claims are therefore not properly before us.

Based on the master's report, we are satisfied that the plaintiffs raised two legal issues which they may pursue here. First, they claim that there is no statutory authority for the appointment of any masters other than retired justices of the supreme and superior courts. As support for this position, they cite RSA 491:23, first enacted by Laws 1939, 60:1. That statute provides that the superior court "shall appoint as . . . masters . . . such former justices of the supreme and superior court as have retired . . . by age limitation. . . ."

If the quoted provision stood alone, there would at least be a colorable basis to argue that the legislature once intended to restrict masters to retired justices. But RSA 491:23 does not stand alone. It stands in company with RSA 519:9, which provides generally for the commitment of "any causes at law or in equity" to one or more referees, subject to the right to trial by jury. RSA 519:10 provides that the referees shall proceed "according to the rules of law or of equity" unless the parties agree otherwise. While the class of "referees" may be broader than the class of masters, *see, e.g., Drown v. Hamilton*, 68 N.H. 23, 44 A. 79 (1894), it is apparent from the quoted language that "referees" include masters. *Cornforth v. Cornforth*, 123 N.H. 61, 455 A.2d 1049 (1983). *See Free v. Buckingham*, 59 N.H. 219 (1879).

■ Thus, for some sixty-five years before the enactment of RSA 491:23 in 1939, the superior court had the authority under RSA 519:9 to assign cases to referees, including those referees whom we now call masters. There is no indication that RSA 491:23 was intended to restrict that authority. The later statute does not expressly do so, and the plaintiffs have cited no legislative history indicating that RSA 491:23 was intended to have that effect. Therefore, we find no basis to infer that the enactment of RSA 491:23 restricted the authority of the superior court to appoint masters who were not retired justices.

■■ On the contrary, the legislature has adopted the construction of RSA 519:9 that the plaintiffs' argument challenges. For more than forty years since the enactment of RSA 491:23 the superior court has continued to appoint masters who are not retired justices, under the apparent authority of what is now RSA 519:9. During that time the former statute has been reenacted as RL 395:9 and RSA 519:9. It was amended in a respect not relevant here but otherwise reenacted by Laws 1967, 132:30. When the legislature reenacts a statute on which a "repeated practical construction has been placed by the Bench and Bar," that reenactment constitutes a legislative adoption of the longstanding construction. *State v. Deane*, 101 N.H. 127, 130, 135 A.2d 897, 899 (1957). We therefore conclude that the legislature has authorized the practice in question. Given this conclusion, we have not had occasion to consider other possible sources of authority to appoint masters, in addition to statute.

The plaintiffs' second claim is that "the appearance of justice would be ill served" by allowing a master to judge the case of another master who may one day judge a case in which the first master appears as counsel. While they urge us to accept this position, the plaintiffs are candid to note that they claim no "overt bias" in this case. Rather, they emphasize the possibility of bias under the circumstances, and urge us to reverse the judgment in this case under our supervisory power. *See* RSA 490:4. This would provide a general rule for the future at the incidental cost of a new trial in this case.

We find merit in the plaintiffs' position that the practice followed here could create the appearance that impartiality was at risk, and we agree that a general rule should preclude the practice. We need not reverse the judgment in this case to reach such a result, however, because on January 26, 1984, the superior court adopted the very position that the plaintiffs have urged upon us. That position was formally approved by this court on July 3, 1984, and promulgated as Administrative Rule 13–14 of the Superior Court: "No Regular or Special Master shall appear as counsel in connection with any matter before any other Certified Superior Court Master."

672

■ Since there is no need to reverse the judgment for the sole purpose of imposing a general policy, and since there is no claim of actual prejudice or unfairness, the judgment below will be affirmed insofar as it relates to the appointment of the master.

*Affirmed with respect to the appointment of the master.*

All concurred.