Manchester District Court
No. 84-367

CHRISTY & TESSIER, P.A.

v.

BRUCE PAUL WITTE

July 1, 1985

*Christy & Tessier P.A.*, of Manchester (*Scott F. Innes* on the brief), by brief for the plaintiff.

*Bruce P. Witte*, by brief and orally, pro se.

*Stephen E. Merrill*, attorney general (*Loretta S. Platt*, assistant attorney general, on the brief), by brief for the State, as amicus curiae.

PER CURIAM.   The defendant appeals a judgment of the Manchester District Court (*Capistran*, J.), awarding the plaintiff $250 plus costs for the services of one of its members, Thomas Tessier, Esq., as a special master in the defendant's divorce proceeding. We reverse.

The defendant was represented in the divorce action by Wilfred Desmarais, Esq. For reasons that are not a matter of record, Mr. Desmarais advised the defendant against appearing before the marital master who had been scheduled to hear his case and explained that the case could be tried to a special master appointed by agreement of the parties. *See* RSA 519:9. The district court found that Mr. Desmarais, with the defendant's approval, agreed with opposing counsel to select Mr. Tessier as special master and to pay one-half of the fee to compensate the master for his time and services. The special master heard the case and the superior court approved his recommendations. From the resulting decree the defendant brought an appeal, which this court summarily dismissed. *Witte v. Witte*, No. 83-184.

The defendant nonetheless refused to pay his share of the special master's bill, which led to the present action. The defendant admits that he accepted his counsel's advice to seek the services of a special master, and he further admits that his counsel informed him that he would have to pay the master specially. He nonetheless maintains that he was entitled to be heard by a judge, that he was entitled to be heard without paying a fee, and that he agreed in general terms

to pay for a special master without understanding his rights as a litigant.

In finding that the defendant was liable, the district court applied *Manchester Housing Authority v. Zyla*, 118 N.H. 268, 385 A.2d 225 (1978), which holds that in the absence of evidence that an attorney acted beyond the scope of his authority, the attorney's settlement agreement binds the client. The district court found that Mr. Desmarais did have authority to agree to the appointment and payment of Mr. Tessier, and therefore returned a verdict for the plaintiff for the defendant's share of the cost of Mr. Tessier's services.

Although the defendant challenges the use of masters, we are satisfied that the defendant is entitled to prevail on the more limited issue of whether an agreement to pay for the cost of a special master should be treated differently from other agreements of counsel that are presumptively enforceable against a client under *Zyla*. We hold that they should be treated differently and that the present agreement to pay the special master's fee is unenforceable against the defendant.

We know from our own judicial experience that the great majority of cases committed to masters in the superior court are heard before regular masters who are compensated by the State at no extra expense to the parties. *See Brooks v. Padula*, 125 N.H. 668, 485 A.2d 1032 (1984); RSA 519:9 and :15 (Supp. 1983); RSA 491:23. We likewise know that a frequent object of appointing special masters by agreement in particular cases is to accommodate the parties with special scheduling more preferable than the judicial system would ordinarily provide. To counsel in such cases it may seem reasonable enough that the parties who obtain the benefit of special scheduling should bear the cost of it. As this case illustrates, however, it is not always so evidently reasonable to clients. Therefore the practice of paying special compensation to masters runs the risk of appearing to be an improper purchase of justice.

This risk is heightened by the real possibility that an unsophisticated litigant would agree to pay a share of a special master's fee out of fear that the only alternative was inadequate or unfavorable treatment by a master who received no special compensation. Any client who compensated a special master on the basis of such a misapprehension would in effect be paying money in the hope of buying favor or preventing an opposing party from obtaining favor. A system that allowed for such a possibility would risk the appearance of condoning bribery.

■■ Although we would need no constitutional authority to prevent bribery in the judicial system, this was nonetheless the

object of the provision in part I, article 14 of the Constitution of New Hampshire, that "[e]very subject of this state is entitled . . . to obtain right and justice freely, without being obliged to purchase it . . . ." *See State v. Basinow*, 117 N.H. 176, 178, 371 A.2d 458, 459–60 (1977). Avoiding the appearance of such impropriety is no less imperative than avoiding its reality.

The appearance of impropriety can be avoided only by counsel's careful explanation to his client that payment of a special master's fee is not the means to obtain favor or avoid disfavor. While we do not fault the defendant's counsel in this case, we believe that the avoidance of improper appearance calls for a client's formal written indication that he understands the purpose of appointing and compensating a special master, before the client can be charged with a share of such compensation.

To satisfy this requirement a client must indicate in writing that he understands that he is under no obligation to accept a special master or to compensate anyone for sitting as such; that if a special master is appointed each side will bear an equal share of the cost in the first instance; that if he chooses not to agree to the appointment of a special master his decision will not be noted in the records of the court or be made known to the court in any way; and that the decision to appoint a special master is being made solely for the purposes of its effect on the scheduling of the case, and on counsel fees to the extent that they may be affected by scheduling.

Applying this requirement, we hold that the agreement to compensate the special master in this case is unenforceable against the defendant personally. We express no opinion about the liability of his counsel, since that issue was not raised before us.

*Reversed.*

KING, C.J., did not sit.