Grafton
No. 2003-473

DAVID FOLLANSBEE

v.

PLYMOUTH DISTRICT COURT

RICHARD KELLY

v.

THE STATE OF NEW HAMPSHIRE

Argued: June 17, 2004
Opinion Issued: August 31, 2004

*Kelly A. Ayotte*, acting attorney general (*Orville B. Fitch II*, assistant attorney general, on the brief and orally), for the State.

*Chris McLaughlin*, assistant appellate defender, of Concord, on the brief and orally, for the plaintiffs.

NADEAU, J. These consolidated cases are before the court on interlocutory transfer without ruling. *See* SUP. CT. R. 9. The plaintiffs, David Follansbee and Richard Kelly, each sought to vacate a bail commissioner's fee charged pursuant to RSA 597:20 (Supp. 2003). Following denial of their motions by the Plymouth and Lebanon District Courts, respectively, the plaintiffs filed petitions for writs of mandamus in the superior court challenging the constitutionality of RSA 597:20. The

superior court converted the matters to petitions for declaratory judgment and joined them for all further proceedings.

Pursuant to Supreme Court Rule 9, the Trial Court (*Morrill*, J.) transferred the following question to this court:

> Whether R.S.A. 597:20, entitling bail commissioners to a $30 fee upon setting bail, violates the guarantee of part I, article 14 of the New Hampshire Constitution that "[e]very subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws"?

We conclude that the statute does not violate Part I, Article 14.

Bail commissioners are justices of the peace and quorum appointed by the superior court or a district court "as commissioners authorized to fix and receive bail" as provided in RSA chapter 597. RSA 597:15, :15-a (2001). A person arrested for a bailable offense may, at any time prior to his arraignment, apply to have bail determined by a bail commissioner, who is empowered to "fix the amount of and receive bail in the same manner as the court might do, except in cases provided for by RSA 597:4." RSA 597:18 (2001). RSA 597:20 authorizes a fee for bail commissioners as follows:

> . The bail commissioners in such cases shall be entitled to a fee of $30. However, clerks of court or members of their staffs who are bail commissioners shall be entitled to collect such fee only when called while not on active duty. In jurisdictions where the bail commissioner is a full-time salaried police officer, constable, sheriff, deputy sheriff, state police employee, or anyone else authorized to execute police powers, such person shall not receive the fee established in this section, but instead such amount shall be remitted to the town or city in which the ... district court is situated.

RSA 597:20.

The plaintiffs contend that RSA 597:20 is unconstitutional because it requires the payment of a fee to a judicial officer for holding a hearing and issuing a decision. They also argue that RSA 597:20 violates the equal protection component of Part I, Article 14 because it treats persons arrested for bailable offenses differently depending upon whether court is in session when they are arrested. We will address the equal protection argument first.

We have observed that Part I, Article 14 of our State Constitution "is basically an equal protection clause in that it implies that all litigants similarly situated may appeal to the courts both for relief and for defense under like conditions and with like protection and without discrimination." *State v. Basinow,* 117 N.H. 176, 177 (1977) (quotations omitted). We have also recently clarified our equal protection analysis, harmonizing it with that used by the federal courts. *See In re Sandra H.,* 150 N.H. 634, 638-39 (2004). That analysis requires that we "first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected." *Id.* at 637 (quotation omitted).

> Classifications based upon suspect classes or affecting a fundamental right are subject to the most exacting scrutiny; to pass constitutional muster, they must be justified by a compelling governmental interest and must be necessary to the accomplishment of its legitimate purpose. Classifications involving important substantive rights must be reasonable and rest upon some ground of difference having a fair and substantial relation to the object of the legislation. . . . Finally, absent some infringement of a fundamental right, an important substantive right, or application of some recognized suspect classification, the constitutional standard to be applied is that of rationality.

*Id.* at 637-38 (quotations and citations omitted).

The plaintiffs argue that "the right to bail, although not absolute, is a right protected by both the State and Federal Constitutions and affects a substantial liberty interest." Therefore, they contend that strict scrutiny must be used to evaluate the statute's constitutionality. The State, on the other hand, asserts that the interest at issue is not the right to a bail determination, but the liability for the bail commissioner's fee, which is not a liberty interest. The State explains:

> RSA 597:2 read in light of RSA 597:18 requires a bail commissioner to set bail for an arrestee who applies for a bail determination, but who is unable to pay the fee at that time. At most, RSA 597:20 imposes a liability on the arrestee to pay the $30 at some future time.

The Bail Commissioner's Handbook, which under RSA 597:18-a (2001) must be provided to all bail commissioners, states: "Under no circumstances should an accused's right to bail be denied because the accused cannot pay the bail Commissioner's fee." The handbook further provides that if an accused cannot pay the fee at the time of setting bail,

the commissioner may either waive the fee or make arrangements with the accused for later payment. The State also points out that in these consolidated cases neither plaintiff paid the fee, yet each received a bail determination. The State therefore argues that the rational basis test applies. We agree with the State.

The Supreme Court addressed a similar issue in *Schilb v. Kuebel*, 404 U.S. 357 (1972), which involved an Illinois statute providing for the retention, after the conditions of a bail bond had been satisfied, of 1% of the bail amount as "bail bond costs." *Schilb*, 404 U.S. at 361 (quotation omitted). In conducting an equal protection analysis, the Court stated:

> [W]e are not at all concerned here with any fundamental right to bail or with any Eighth Amendment-Fourteenth Amendment question of bail excessiveness. Our concern, instead, is with the 1% cost-retention provision. This smacks of administrative detail and procedure and is hardly to be classified as a "fundamental" right or as based upon any suspect criterion.

*Id.* at 365.

In other constitutional challenges to bail fees, courts have also found no liberty interest implicated where, as here, the plaintiffs alleged no actual deprivation of liberty on behalf of themselves or others. *See Broussard v. Parish of Orleans*, 318 F.3d 644, 651 (5th Cir.), *cert. denied*, 539 U.S. 915 (2003) (Eighth Amendment claim); *see also Estate of Payne v. Grant County Court*, 508 N.E.2d 1331 (Ind. Ct. App. 1987), *cert. denied*, 488 U.S. 853 (1988).

■ Because we find no fundamental right to liberty implicated here, we employ the rational basis test. *See In re Sandra H.*, 150 N.H. at 638; *see also Schilb*, 404 U.S. at 365. The State argues that the fee is "rationally related to the State's legitimate interest in making an expedited bail hearing available 24 hours daily, seven days a week to persons arrested for bailable offenses." We note that offering such expedited bail hearings primarily advances the arrestees' interest in obtaining immediate release from detention. "It has long been recognized that governmental undertakings can properly be supported in whole or in part by charges made upon those who avail themselves of the advantages offered thereby. Such charges must bear a relation to the expense of rendering the particular service." *Niemiec v. King*, 109 N.H. 586, 587 (1969) (citations omitted). The plaintiffs have not argued that the thirty-dollar fee is excessive in relation to the service bail commissioners provide, nor do we find it to be so as a matter of law. *Cf. id.* We conclude that the fee is

rationally related to the provision of a direct service to after-hours arrestees. *Cf. id.* at 588.

The plaintiffs also appear to make equal protection arguments involving indigency, although they concede that "[t]he class of persons similarly situated in this case is not defined by financial status." First, they posit a "chilling effect" of the commissioner's fee, contending that an indigent arrestee concerned about having to pay a fee may elect not to use the bail commissioner's services. They also argue that even though the Bail Commissioner's Handbook prohibits withholding a bail determination due to an arrestee's inability to pay the fee, "that policy does not have the force of law." We find these claims speculative at best, *cf. Broussard*, 318 F.3d at 651, and we decline to address them on the merits.

The plaintiffs further assert that RSA 597:20 is unconstitutional under the principles announced in *State v. Cushing*, 119 N.H. 147 (1979). *Cushing* held unconstitutional a statute requiring the payment of an eight-dollar fee to the superior court for a *de novo* jury trial on appeal from a misdemeanor conviction in district or municipal court. *See Cushing*, 119 N.H. at 147-48. *Cushing* distinguished *Basinow*, which had upheld an eight-dollar filing fee to appeal a noncriminal parking violation, *see Basinow*, 117 N.H. at 177-78. *See Cushing*, 117 N.H. at 147-48. *Basinow* reasoned that the filing fee at issue did not violate Part I, Article 14 of the State Constitution, which "was designed to abolish, not fixed fees, prescribed for the purpose of revenue, but the fines which were anciently paid to expedite or delay law proceeding and procure favor." *Basinow*, 117 N.H. at 178 (quotation omitted). Nevertheless, in *Cushing*, we held that "a criminal defendant cannot be required to purchase a jury trial—even for so nominal a sum as eight dollars." *Cushing*, 119 N.H. at 148.

The plaintiffs argue that "[t]his case is analogous to *Cushing*" because they were "charged with criminal offenses and the right affected by the fee is a constitutional right, *i.e.*, the constitutional right to bail." (Citation omitted.) We disagree. *Cushing* was decided under equal protection principles based upon the fundamental right to a jury trial for criminal defendants. *See Cushing*, 119 N.H. at 148. We have already determined that the right at issue is not a fundamental right to bail, as alleged by the plaintiffs, and that the statute does not violate equal protection principles. Thus, we reject the plaintiffs' *Cushing* argument.

Finally, the plaintiffs argue that RSA 597:20 is unconstitutional because it involves payment to a judicial officer for holding a hearing and issuing a decision. They contend that bail commissioners, as justices of the peace, are "judicial officers of inferior rank," *Opinion of the Justices*, 131 N.H. 443, 448 (1989) (quotation and brackets omitted), who are prohibited under

*In re Estate of Henry Dionne*, 128 N.H. 682 (1986), from being paid a fee to render a decision.

In *Dionne*, we struck down a statute that entitled probate judges to be compensated by a party or parties for presiding at special sessions on days other than those on which the probate court regularly sat. *See Dionne*, 128 N.H. at 683. We held that this "method of compensating probate judges for special sessions smacks of the purchase of justice, and is therefore anathema to the New Hampshire Constitution." *Id.* at 684. We recognized, citing *Basinow*, that Part I, Article 14 of our State Constitution "does not prohibit the payment of reasonable filing fees in connection with the filing of cases and appeals in our courts." *Id.* at 684-85. Nevertheless, we concluded that it does "forbid the payment of a fee to a judge in consideration of his holding a special session and rendering a judicial decision for a party." *Id.* at 685.

The State, on the other hand, contends that this case is more analogous to *Christy & Tessier v. Witte*, 126 N.H. 702 (1985), than *Dionne*. Specifically, the State argues that RSA 597:20 is not unconstitutional because application for a determination of bail by a bail commissioner is "optional," and the alternative of waiting to be arraigned in court "does not impose an unconstitutional delay."

In *Dionne*, we distinguished *Christy & Tessier*, which we described as "upholding [the] practice of compensating special masters when parties have genuine choice in using such master's services." *Dionne*, 128 N.H. at 685. Specifically, *Christy & Tessier* involved the appointment of special masters in marital cases. We noted that most cases heard by masters in superior court come "before regular masters who are compensated by the State at no extra expense to the parties." *Christy & Tessier*, 126 N.H. at 704. Nevertheless, we observed that "a frequent object of appointing special masters by agreement in particular cases is to accommodate the parties with special scheduling more preferable than the judicial system would ordinarily provide." *Id.*

We allowed the practice to stand, but because we recognized that it "runs the risk of appearing to be an improper purchase of justice," *id.*, we imposed safeguards to avoid the appearance of impropriety. *Id.* at 705. We held that before a client can be charged with his share of the master's fee, he must indicate in writing "that he understands the purpose of appointing and compensating a special master." *Id.*

■ We agree with the State that this case is more analogous to *Christy & Tessier* than *Dionne*. We noted in *Dionne* that it was clear that the number of days set by the legislature for the general sessions of the probate courts was insufficient to accommodate all of the matters needing

to come before those courts. *See Dionne*, 128 N.H. at 684. In contrast, there is no indication here that an arrestee for a bailable offense who chose to wait for a regular court session would or could not timely receive a bail determination. In this case, the parties incur a fee by choosing to avail themselves of a special accommodation for their convenience.

Like the situation in *Christy & Tessier*, however, this case may present "the risk of appearing to be an improper purchase of justice," *Christy & Tessier*, 126 N.H. at 704. Therefore, we impose the following safeguards to avoid that appearance. The bail commissioner must inform arrestees of the date they could come before the court if they choose not to have bail set. The bail commissioner must also hold a bail hearing whether the fee is paid or not, and must inform arrestees that a hearing will be held regardless of whether the fee is paid. The bail commissioner must also inform arrestees that if they cannot pay the fee at the time of setting bail, then the fee may be paid over time or it will be waived for indigency.

With these conditions, we conclude that RSA 597:20 does not violate Part I, Article 14 of our State Constitution. Because both plaintiffs received a bail determination without paying the fee, Kelly has received written confirmation that the bail commissioner will not attempt to collect the fee from him, and Follansbee has not claimed to be indigent, we remand with instructions to dismiss their petitions.

*Remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.