Belknap
No. 2008-355

NANCY J. LAMARCHE

v.

STEPHANIE A. MCCARTHY

Argued: November 12, 2008
Opinion Issued: December 31, 2008

*Simpson & Mulligan, P.L.L.C.*, of Lebanon (*Gary Apfel* on the brief and orally), for the plaintiff.

*Getman, Stacey, Schulthess & Steere*, of Bedford, for the defendant, filed no brief.

*Howard J. Zibel* and *Karen J. Borgstrom*, of Concord (on the brief), for the intervenor, The Office of Mediation and Arbitration.

*Kelly A. Ayotte*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the brief and orally), for the State of New Hampshire, as *amicus curiae*.

DUGGAN, J. This case is before us on an interlocutory transfer from Belknap County Superior Court (*Smukler*, J.). The facts as presented in the joint interlocutory appeal statement are as follows. Nancy Lamarche and Stephanie McCarthy are plaintiff and defendant respectively in a personal injury matter. At a structuring conference for that case, the defendant orally moved for relief from the mandatory fifty dollar fee under Superior Court Temporary Rule 170 (Rule 170). The trial court ruled that requiring the parties to pay fifty dollars to enter mandatory alternative dispute resolution (ADR) violates Part I, Article 14 of the New Hampshire Constitution.

The Office of Mediation and Arbitration (OMA) moved to intervene "solely for the purpose of bringing forward the constitutional question for determination by this court." The trial court granted the motion to intervene. After *pro bono* counsel was secured to represent the plaintiff on appeal, the trial court granted the motion for interlocutory transfer, adding two additional questions. Thus, pursuant to Supreme Court Rule 8, the superior court transferred three questions:

I. Whether the OMA has standing to intervene in this matter.

II. Whether the matter should have been transferred at all, given that the issue arises from a temporary (and not a final) rule.

III. Whether the Trial Court erred when it held that the administrative fee of $50.00 per party under Temporary Superior Court Rule 170 violates Part I, Article 14 of the New Hampshire Constitution.

I

As to the first question, we answer that the OMA has standing to intervene in this case.

The plaintiff makes two arguments against the OMA's standing: first, because the OMA is a party for the first time on appeal, the trial court never had the opportunity to rule on the issues and correct any error; and second, the OMA has no right or direct interest in the personal injury suit, and rather than intervening, the OMA should have filed a declaratory judgment action on the constitutionality of Rule 170 or instigated a small claims action to recover the fees.

■ Superior Court Rule 139 states, in pertinent part: "Any person shown to be interested may become a party to any proceeding in equity on his petition briefly setting forth his relation to the cause." "The right of a party to intervene in pending litigation in this state has been rather freely allowed as a matter of practice." *Brzica v. Trustees of Dartmouth College*, 147 N.H. 443, 446 (2002) (quotation omitted). A trial court should grant a motion to intervene if the party seeking to intervene has a right involved in the trial and a direct and apparent interest therein. *Snyder v. N.H. Savings Bank*, 134 N.H. 32, 35 (1991). It is within the trial court's discretion to grant intervenor status. *Samyn-D'Elia Architects v. Satter Cos. of New England*, 137 N.H. 174, 177 (1993). We will not overturn the trial court's decision unless we are persuaded that the court's exercise of discretion is unsustainable. *See Brzica*, 147 N.H. at 446.

■ We are not persuaded by the plaintiff's argument that the trial court had no opportunity to rule on the issue and correct any error. It is true that litigants cannot generally raise issues for the first time on appeal. "[O]rdinarily, trial courts should have an opportunity to rule upon issues and to correct errors before they are presented to the appellate court." *State v. Brum*, 155 N.H. 408, 417 (2007). In this case, however, the trial court had the opportunity to rule upon Rule 170's constitutionality.

■■ We also disagree with the plaintiff that the OMA's ability to bring a small claims suit requires dismissal. Although the availability of other remedies weighs against granting intervenor status, it is not an absolute bar. *See Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 141-42 (1983) (rather than intervene in child's case against tortfeasor, insurer could have intervened in case instigated by boy's father who owned the policy, or could enforce its subrogation rights by instituting its own action in father's name). Here, the OMA's purpose is not to collect the fees. Rather, its sole reason for intervening is to determine Rule 170's constitutionality. Thus,

the fact that there are other means of recovering the fee does not preclude the OMA's standing to bring this appeal.

◼ Nor does the fact that the OMA has no direct or apparent interest as a party in the subject matter of the underlying personal injury litigation bar it from intervening. Indeed, this case closely parallels *Petition of Keene Sentinel*, 136 N.H. 121 (1992). In that case, a newspaper intervened in a divorce proceeding to gain access to a party's prior divorce records, which were sealed. *Keene Sentinel*, 136 N.H. at 125. The parties to the divorce objected, arguing that the newspaper had no interest in the divorce itself. *Id.* We held that, "[p]rocedurally, this case more appropriately should have been initiated by a petition for access to the sealed records." *Id.* We went on, however, to say that "the newspaper's choice of procedure should not jeopardize its pursuit of a potentially meritorious claim," and permitted it to intervene. *Id.* The same is true in this case. The OMA more appropriately should have initiated a petition for declaratory judgment or instigated a small claims action. Its choice of procedure, however, should not jeopardize its pursuit of a potentially meritorious claim. It was, therefore, not an unsustainable exercise of discretion to grant the OMA intervenor status in this case.

## II

As to the second question, we answer that Rule 170's temporary nature does not mean that the case could not have been transferred. No party on appeal argues that Rule 170's temporary nature precludes an interlocutory appeal.

## III

◼ As to the final question, we answer that the trial court erred in holding that the administrative fee violates Part I, Article 14 of our constitution. The party challenging a rule's constitutionality bears the burden of proof. *Cf. Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 693 (1997) (challenging a statute's constitutionality). Because the issue before us is one of constitutional law, we review it *de novo*. *State v. MacElman*, 154 N.H. 304, 307 (2006). We interpret rules to avoid conflict with constitutional rights wherever reasonably possible. *Cf. State v. Pierce*, 152 N.H. 790, 791 (2005) (interpreting a statute).

We adopted Rule 170 in response to the legislature's creation of the OMA. *See* RSA 490-E:1 (Supp. 2008). The OMA was created to develop, promote and administer ADR solutions in all courts. RSA 490-E:2. The legislature created the "mediation and arbitration fund" to "support the operation of the [OMA]." RSA 490-E:4, I. Among the sources of funding are

"moneys collected by the [OMA] from fees," such as the fee at issue in this case. RSA 490-E:4, I(c). Rule 170, in turn, governs ADR in the superior court, including the collection of fees.

Rule 170 requires that "[a]ll writs of summons, transfers of actions from the district court, and such equity cases as the court may deem or the parties may agree are suitable, shall be assigned to ADR, with [certain] exception[s]." SUPER. CT. R. 170(A)(1), 170(A)(2) (exemptions). After filing, "parties shall confer and select an ADR process . . . ." SUPER. CT. R. 170(B)(1). Parties can choose either a paid or a volunteer neutral from approved lists. SUPER. CT. R. 170(B)(2). If the parties choose a volunteer neutral, both parties are "subject to a one-time administrative fee of $50.00 per party. . . . This is an administrative fee which will be designated for use by the [OMA]. . . . Parties who are indigent may petition the court for waiver of the $50.00 administrative fee." SUPER. CT. R. 170(B)(2)(c). The underlying case here was referred to ADR and thus subject to the fifty dollar fee.

■ Part I, Article 14 of the New Hampshire Constitution provides: "Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it . . . ." Article 14 "was designed to abolish, not fixed fees, prescribed for the purpose of revenue, but the fines which were anciently paid to expedite or delay law proceeding and procure favor." *State v. Basinow*, 117 N.H. 176, 178 (1977) (quotation omitted). It "is basically an equal protection clause in that it implies that all litigants similarly situated may appeal to the courts both for relief and for defense under like conditions and with like protection and without discrimination." *Follansbee v. Plymouth Dist. Ct.*, 151 N.H. 365, 367 (2004) (quoting *Basinow*, 117 N.H. at 177).

■ Our prior decisions have generally affirmed the validity of administrative or filing fees in the absence of the appearance of impropriety or the deprivation of a fundamental right. *See Follansbee*, 151 N.H. at 365; *Christy & Tessier v. Witte*, 126 N.H. 702 (1985); *Basinow*, 117 N.H. at 176. In each case we "first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected." *Follansbee*, 151 N.H. at 367 (quotation omitted).

■ In determining the level of scrutiny, we have stated that "[c]lassifications based upon suspect classes or affecting a fundamental right are subject to the most exacting scrutiny; to pass constitutional muster, they must be justified by a compelling governmental interest and must be

necessary to the accomplishment of its legitimate purpose." *Id.* (quotation omitted) "[I]ntermediate scrutiny under the State Constitution requires that the challenged legislation be substantially related to an important governmental objective." *Cmty. Res. for Justice v. City of Manchester,* 154 N.H. 748, 762 (2007) (citing *United States v. Virginia,* 518 U.S. 515, 533 (1996)). "Finally, absent some infringement of a fundamental right, an important substantive right, or application of some recognized suspect classification, the constitutional standard to be applied is that of rationality." *Follansbee,* 151 N.H. at 367 (quotation omitted).

In *Basinow,* we considered an eight dollar filing fee to appeal a parking violation to superior court. *Basinow,* 117 N.H. at 178. The defendant argued that the fee required him to purchase justice. *Id.* at 177. We stated that the fee "in no way resembles the arbitrary exactions paid to corrupt officials in ancient England and does not cause the mischief that article 14 of our constitution was designed to prevent." *Id.* at 178. We thus upheld the fee as constitutional.

In *Christy & Tessier,* we upheld a special master's fee in divorce proceedings. *Christy & Tessier,* 126 N.H. at 705. The defendant refused to pay his share of the fee. *Id.* Had the parties not chosen to proceed with a special master, a master would have decided their case free of charge. *Id.* at 704. We stated that "the practice of paying special compensation to masters runs the risk of appearing to be an improper purchase of justice." *Id.* The risk was "heightened by the real possibility that an unsophisticated litigant would agree to pay a share of a special master's fee out of fear that the only alternative was inadequate or unfavorable treatment by a master who received no special compensation." *Id.* To avoid any appearance of impropriety, we required clients to give formal written indication that they understood their choice to proceed with a special master. *Id.* at 705. We otherwise found the fee constitutional under rational basis review.

In *Follansbee,* we upheld a thirty dollar fee for a bail commissioner to set bail. *Follansbee,* 151 N.H. at 366, 371. We began by noting that arrestees who chose to wait for a regular court session rather than appear before a bail commissioner would receive a timely bail determination. The bail commissioner was nonetheless required to hold a hearing and set bail regardless of the arrestee's ability to pay immediately. *Id.* at 371. The hearing simply created a liability on the arrestee to pay thirty dollars. *Id.* Because the refusal to pay the fee did not deprive an arrestee of any right, we conducted a rational basis review and upheld the fee as constitutional. *Id.* at 368.

Where, by contrast, a fee deprives a party of a fundamental right, or results in actual or apparent bribery, we have found it to be unconstitutional. *See In re Estate of Dionne*, 128 N.H. 682, 684 (1986); *State v. Cushing*, 119 N.H. 147 (1979).

In *Cushing*, the defendant challenged an eight dollar fee required to appeal a misdemeanor for a trial *de novo* in superior court. *Cushing*, 119 N.H. at 147. We recognized that the right to a jury trial in criminal cases is fundamental to our system of criminal justice. *Id.* at 148. Applying strict scrutiny, we therefore held that "a criminal defendant cannot be required to purchase a jury trial even for so nominal a sum as eight dollars." *Id.*

In *Estate of Dionne*, we held that Article 14 "forbid[s] the payment of a fee to a judge in consideration of his holding a special session and rendering a judicial decision for a party." *Estate of Dionne*, 128 N.H. at 685. At the time, probate courts were unable to hear the large number of pending cases within the allocated session days. *Id.* at 684. Probate courts accommodated parties by charging fees to hear cases in "special sessions." *Id.* Such a fee, we held, is distinguishable from an otherwise constitutional filing or administrative fee, and "smacks of the purchase of justice." *Id.* at 684, 685. "In an era of heightened sensitivity to appearances of impropriety, the spectacle of a citizen or attorney giving cash in one hand and receiving a judicial hearing and decision in the other is one that [cannot] be tolerated." *Id.* at 685. We therefore held the fee unconstitutional.

The plaintiff in this case argues that imposing a fifty dollar ADR fee on litigants is tantamount to requiring one to purchase justice. She argues that such a fee and the sanctions for not paying infringe upon the right to a jury trial and should be equated to the fee levied in *Cushing*, 119 N.H. at 147. The State, as *amicus*, responds that the fifty dollar fee is akin to a filing or other administrative fee. Such fees have been found constitutional in this state and others, and should be upheld. *See, e.g., County of Portage v. Steinpreis*, 312 N.W.2d 731 (Wis. 1981) (affirming fee for defendant to receive jury trial in small claims court); *Fox v. Hunt*, 619 So. 2d 1364 (Ala. 1993) (affirming fifty dollar civil jury fee).

There is no question that the right to a jury trial is fundamental, *see* N.H. CONST. pt. I, art. 20; however, for limitations upon a fundamental right to be subject to strict scrutiny, there must be an actual deprivation of the right. *Follansbee*, 151 N.H. at 368 (citing *Broussard v. Parish of Orleans*, 318 F.3d 644, 651 (5th Cir.), *cert. denied*, 539 U.S. 915 (2003); *Estate of Payne v. Grant County Court*, 508 N.E.2d 1331 (Ind. Ct. App. 1987), *cert. denied*, 488 U.S. 853 (1988)). For example, in *Follansbee*, we held that a thirty dollar fee for a bail assessment did not violate our constitution because an arrestee would receive a hearing regardless of his

or her ability to pay immediately. *Follansbee*, 151 N.H. at 371. Because imposing a fee to be paid at a future time did not deprive arrestees of their right to bail, it was subject to rational basis review. *Id.* at 368. The same is true in this case.

The fifty dollar fee here is akin to the fee in *Basinow*, 117 N.H. at 178. In no way does it resemble the mischief against which Article 14 was intended to protect — bribery. The fee here is a reasonable "fixed fee[], prescribed for the purpose of revenue." *Id.* (quotation omitted). Furthermore, the third-party neutral is not a judge and has no power to make judicial decisions. The neutral does not apprise the trial court of his or her assessment and any decisions are non-binding. SUPER. CT. R. 170(D)(4). The impropriety, or appearance thereof, which was the concern in *Estate of Dionne*, 128 N.H. at 685, is therefore absent in this case.

We also disagree with the plaintiff that possible sanctions render the rule unconstitutional. Rule 170(F) provides sanctions "if a party or party's counsel fails without good cause to appear at an ADR session scheduled pursuant to this rule, or fails to comply with any order made hereunder." The consequence is "any sanction that is just under the circumstances." *Id.* The imposition of sanctions is a matter left largely to the discretion of the trial court. *See American Express Travel v. Moskoff*, 144 N.H. 190, 191 (1999) (imposition of default judgment); *Daigle v. City of Portsmouth*, 131 N.H. 319, 325 (1988) (discovery sanctions).

Because the plaintiff and the defendant are situated differently in terms of accessing the courts, we conduct separate analyses of Rule 170 in regard to plaintiffs and defendants. Available sanctions under section F for a plaintiff's refusal to pay are broad. Indeed, such sanctions could include dismissal of the case if the trial judge found it appropriate. Dismissal for a plaintiff's failure to pay a filing or administrative fee, such as the fee in this case, is both reasonable and constitutional. Such dismissals occur regularly in both the superior court as well as this court, and do not constitute a deprivation of a fundamental right. *See* SUPER. CT. R. 3 (cases will not be entered onto the docket absent an entry fee); SUP. CT. R. 5 (same). Like any filing or other administrative fee, the fee here is constitutional as applied to plaintiffs.

Defendants, however, are on different footing than plaintiffs when it comes to paying the costs of instigating litigation. Plaintiffs, on the one hand, bear the burden of paying to institute an action. Failure to pay those costs results in the action being dismissed. *See* SUPER. CT. R. 3. Defendants, on the other hand, are not required to pay fees before accessing the courts. Nowhere do the rules require a defendant to pay a fee to assert

counterclaims or bring a third party into the case. *See* SUPER. CT. R. 27 (no fee required for defendant to bring third party into a case, need only provide notice); SUPER. CT. R. 62 (counterclaims require only notice prior to structuring conference). They are, however, required to pay the costs of litigating a case (*e.g.*, attorney's fees, copying costs, etc.). Thus, a defendant's failure to pay the fifty dollar ADR fee should not alone bar further litigation. The fee is, however, a litigation cost that must be paid at some point.

 Moreover, in the case of a defendant who has a constitutional right to a jury trial, the sanction under section F for failure to pay the fee cannot include judgment against the defendant. Such a sanction would effectively deprive those defendants of their constitutional right to a jury trial. Rather, we construe the rule to impose a liability upon a defendant to pay fifty dollars. *Cf. Pierce*, 152 N.H. at 791 (we construe statutes to avoid conflicts with constitutional rights). That liability can be met immediately, or at some future time. If a defendant refuses to pay the fee, our constitution does not prohibit the State from taking measures to recover the fee, including a collection action. *See Christy & Tessier*, 126 N.H. at 705 (collection action would be enforceable had defendant given written consent to refer case to special master). To avoid any appearance of impropriety, however, trial courts should inform defendants that their refusal to pay immediately will not result in inadequate or unfavorable treatment during ADR or any later trial. *See id.* at 703.

*Reversed and remanded.*

GALWAY and HICKS, JJ., concurred.